CITY OF STUTTGART *v.* STRAIT.

4-8265      205 S. W. 2d 35

Opinion delivered October 27, 1947.

*Wm. C. Gibson* and *M. F. Elms,* for appellant.

*W. A. Leach,* for appellee.

MINOR W. MILWEE, Justice. This appeal involves the validity of Ordinance No. 392 of the City of Stuttgart, Arkansas, enacted on August 6, 1946, for the purpose of establishing a building line on the east side of Main Street in said city. The pertinent provisions of the ordinance are contained in §§ 1, 2, 3, 5, and 7, which read as follows:

"Section 1. That no fence or other improvements and no buildings of any description shall be built nearer to the center line of Main Street in said city of Stuttgart, between First Street in said city and Sixth Street in said city, on either side of said center line of said Main Street, than fifty (50) feet, either east or west, of said center line, as said center line now exists between First and Fourth Street.

"Section 2. All improvements or buildings of every description hereafter built or erected along that narrower portion of Main Street herein designated must conform in frontage location to an even line with all

other buildings from First Street south along Main Street to the beginning of said narrower portion of Main Street, so that hereafter all buildings or improvements made or constructed on either side of Main Street from First Street to Sixth Street shall be located, fifty (50) feet from the center line of said Main Street, as said center line now exists between First and Fourth Streets.

"Section 3. Nothing in this ordinance shall be construed to interfere with any building now standing nor shall this ordinance interfere with the repairing of any building now existing but it shall apply to any new building or improvement of any kind that may be erected in the future.

"Section 5. Compliance with this ordinance may be enforced by mandamus or injunction proceedings brought by any citizen or property holder owning property in the City of Stuttgart; and if any such improvements or building should be started or begun contrary to the provisions of this ordinance, the city council may cause the same to be removed or remove it through its agents and employees.

"Section 7. The setting back of the building line from the center line of said Main Street, as herein provided for, will greatly reduce the fire hazard by giving more space and room to fight fires and will greatly reduce the traffic hazard by providing more space for pedestrains and will improve health conditions by providing more aid space with a wider unbuilt area. Therefore this ordinance is necessary for the immediate preservation of the·public health, peace and safety, and an emergency is hereby declared and said ordinance shall take effect and be in force from and after its passage and publication."

Stuttgart is a city of the first class and its principal business district is located along the east and west sides of Main Street from First Street on the north to Sixth Street on the south. Main Street is a thoroughfare over which traffic of principal highways leading into the city passes. Beginning at the south line of lot 6 in block 18

of Union Addition to the city and extending north for approximately three blocks, Main Street is 100 feet wide and all lots fronting on the east side of the street in this area extend 140 feet east and west. However, Main Street is only 82½ feet wide from the south line of said lot 6 extending south to Sixth Street. Plaintiff, C. W. Strait, owns a parcel of land extending 60 feet north and south and 157½ feet east and west and fronting on the present east line of Main Street in this area. There is an apartment building situated on the eastern part of this parcel and the west line of the apartment house is 70 feet from the present east line of Main Street.

On September 5, 1946, plaintiff filed this suit in chancery court to enjoin the city and its officers from enforcing the provisions of the ordinance. Plaintiff alleged in his complaint that he was contemplating the erection of an office building on his lots between the apartment building and the present east line of Main Street; that the power to establish building and set-back lines has not been delegated by the General Assembly of Arkansas to the City of Stuttgart, and that the city is without power to enact the ordinance which is, therefore, void; that the enforcement of said ordinance would confiscate that portion of plaintiff's property lying within 17½ feet of the present east line of Main Street; that the ordinance violates the due process clauses of both the state and federal constitutions in that it contains no provision whereby plaintiff may be compensated for the loss of his property.

In its answer the city denied that enforcement of the ordinance would confiscate plaintiff's property or that it violated the due process clauses of the state or federal constitutions. The answer also denied that plaintiff would suffer any damage on account of the enforcement of the ordinance and alleged that the property of plaintiff would be benefited thereby in an amount far exceeding any damage that might be suffered. The cause was submitted to the chancellor upon the pleadings and the following stipulation:

"The plaintiff is the owner of the south 23 feet of lot 8, and all of lot 9, and the north 13 feet of lot 10, in block 18, of Union Addition to the City of Stuttgart. The said described property being 60 feet north and south and 157 5/10 feet east and west, and extending eastward from the present east line of Main Street to the alley running north and south through said block 18.

"That situated on the eastern end of said above described property is a frame building known as the 'Magnolia Apartments' and the distance from the west side of said building to the present east line of Main Street is 70 feet.

"The enforcement of Ordinance No. 392 of the Ordinances of the City of Stuttgart will prevent him (plaintiff) from erecting thereon any buildings or structures of any kind and character whatsoever on the 17½ feet between the proposed building line and Main Street.

"A drawing of said block 18 of Union Addition showing the present east line of Main Street and the boundary lines of the property owned by various persons on that part of block 18, beginning with lot 7 and extending southward to Sixth Street, is hereto attached, made a part hereof and may be received in evidence.

"The City of Stuttgart has not adopted the provisions of §§ 9690-9696 of Pope's Digest and has not created a Planning Commission as provided in said statutes, and is in no position to exercise any of the powers delegated to the city by the above mentioned statutes."

The chancellor held the ordinance invalid and permanently enjoined the officers of the city from enforcing its provisions. The city has appealed.

The right of the City of Stuttgart to establish building or setback lines on the property of plaintiff must be determined by the nature and scope of the power which has been conferred on the city by the General Assembly of this state. In the case of *Nesler* v. *Paragould,* 187 Ark. 177, 58 S. W. 2d 677, this court said: "The right to enact ordinances is a power conferred on municipal

corporations by legislative grant, and therefore its authority to legislate is limited to the authority found in an express grant of power, or which is necessarily implied in the express grant in order to make effective the attainment of the purpose for which the express authority is given. *Argenta* v. *Keath,* 130 Ark. 334, 197 S. W. 686, L. R. A. 1918B, 888.'' This rule was reaffirmed in *Bennett* v. *City of Hope,* 204 Ark. 147, 161 S. W. 2d 186, where the court said: ''Municipal corporations derive their legislative powers from the general laws of the state. Article 12, § 4, Constitution of Arkansas. In *City of Argenta* v. *Keith,* 130 Ark. 334, 197 S. W. 686, L. R. A. 1918B, 888, we said: 'A municipal corporation has no powers except those expressly conferred by the Legislature, and those necessarily or fairly implied as incident to or essential for the attainment of the purposes expressly declared. *Willis* v. *City of Fort Smith,* 121 Ark. 606, 182 S. W. 275; *Bain* v. *Fort Smith Light & Traction Co.,* 116 Ark. 125, 172 S. W. 843, L. R. A. 1915D, 1021; *Morrilton Waterworks Imp. Dist.* v. *Earl,* 71 Ark. 4, 69 S. W. 577, 71 S. W. 666.' ''

The only legislative act which expressly delegates to municipal corporations the power to establish building or setback lines is Act 295 of 1937 which amended Act 108 of 1929. These acts authorize cities of the first and second class to provide for city zoning and planning through the creation of a Planning Commission. Section 3 of Act 295 of 1937 amended § 5 of Act 108 of 1929, and now appears as § 9694 of Pope's Digest, the third and fourth paragraphs of which read as follows: ''Whenever the plan for a major street system has been adopted by the Planning Commission and properly filed, the City Council, upon recommendations of the Planning Commission, is hereby authorized and empowered to establish, regulate and limit, by order, building or setback lines on such major highways, and to prohibit any new building being located within such building or setback lines within the corporate limits of the city.

''The City Council shall provide for the method by which this section of the Act shall be enacted and enforced and shall provide for a Board of Adjustment with

powers to modify or vary the regulations, in specific cases, in order that unwarranted hardship, which constitutes a substantial deprivation of use as distinguished from merely granting a privilege, my be avoided, the intended purpose of the regulations strictly observed and the public welfare and public safety protected. These regulations shall not be adopted, changed, or amended until a public hearing has been held thereon, fifteen (15) days' notice regarding the time and place of which shall be published in a newspaper of general circulation within the city."

Now it is conceded in the stipulation of the parties that the city is not in position to exercise any of the powers delegated to it by the above mentioned statutes, since it has not created a planning commission nor adopted the procedure set out in such acts. It, therefore, becomes unnecessary for us to determine the validity of these acts insofar as the power of the city to establish building lines is involved herein.

For reversal of the decree, however, the city insists that it had ample authority to enact the ordinance under the provisions of Act 352 of 1907 which is entitled, "An Act conferring upon cities of the first class the power to better regulate the building, razing or removing houses." The act reads as follows:

"Section 1. The following enlarged and additional powers are hereby conferred upon cities of the first class, namely: They shall have the power to regulate the building of houses, and to provide that no house or structure shall be erected within the city limits except upon a permit to be issued by such officer or officers as the City Council shall designate, and to provide that no permit shall be issued for the building of any house or structure deemed to be unsafe, unsanitary, obnoxious, or detrimental to the public welfare.

"Section 2. They shall also have the power to order the removal or razing of, or to remove or raze any buildings or houses that have become in the opinion of the council dilapidated, unsightly, unsafe, unsanitary, ob-

noxious, or detrimental to the public welfare, and shall provide by ordinance the manner or (of) removing and making such removals." The foregoing sections now appear as §§ 10053 and 10054, Pope's Digest.

We agree with counsel for the city that the 1907 act was not repealed by Acts 108 of 1929 and 295 of 1937, *supra,* but we cannot agree that the act authorized the city to establish building lines, or that such power is necessarily implied from its provisions. By the terms of the act cities of the first class are authorized to enact ordinances prohibiting the erection of buildings anywhere within the city without a permit first being procured. The city is also empowered to prohibit the erection of any structure within the city limits that is deemed to be unsafe, obnoxious, or detrimental to the public welfare, and may order the removal of such structures. The power expressly delegated relates solely to the kind and character of buildings which may be erected and not the location thereof. The power to regulate is confined to the type of structure that may be erected or removed anywhere within the city. Building and setback lines are not mentioned in the act. The exercise of the power to establish such lines might deprive a property owner of a substantial use of his property without compensation to him for the loss of this valuable right. Before it should be said that a property owner may be deprived of such a valuable right the power of a municipal corporation to do so should be unmistakably clear from language of the legislative grant.

The fact that the Legislature of 1937 through Act 295, *supra,* did mean to specifically delegate to cities of the first and second class the power to fix building lines would indicate a recognition by the lawmakers that such authority had not been given in prior enactments. *Bragg v. Adams,* 180 Ark. 582, 21 S. W. 2d 950. We think it is clear that there was no intention on the part of the lawmakers to delegate the power to fix building and setback lines to municipal corporations in the Act of 1907, *supra.*

The city also contends that it has authority to enact the ordinance in question under the provisions of Act

102 of 1939, which amends § 9619 of Pope's Digest. This statute contains express grants of power to all municipalities and provides: "They shall have the power to regulate the erection, construction, reconstruction, alteration and repair of buildings; to make reglutions for the purpose of guarding against accidents by fire; to require the use of fire-proof or fire-resistant materials in the erection, construction, reconstruction, alteration or repairs of buildings, and to provide for the removal of any buildings or additions thereto erected contrary to such prohibition." This statute is an amendment of the 13th section of an Act of March 9, 1875, the same act which contained the so-called "general welfare clause," which now appears in § 9543 of Pope's Digest. The welfare clause provides: "and they shall have power to make and publish such by-laws and ordinances, not inconsistent with the laws of this State, as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof."

Act 102 of 1939, *supra,* clearly defines and limits powers which are expressly delegated in reference to building regulations. It neither expressly nor impliedly authorizes the establishment of building and setback lines. It is true that the general welfare clause contains a general grant of power and municipal corporations have a broad discretion in determining what is necessary for the public welfare, but this clause may not be used to enlarge special grants of power set out in Act 102 of 1939 with reference to building regulations. This rule was laid down in the early case of *Tuck* v. *The Town of Waldron,* 31 Ark. 462. This case construed the provisions of the original act of March 9, 1875 and the court there said: "The rule seems to be, as stated by Judge DILLON, that 'When there are both special and general provisions, the power to pass by-laws under the special or express grant, can only be exercised in the cases, and to the extent, as respects those matters, allowed by the charter. or incorporating act; and the power to pass by-laws under the general clause does not enlarge or annul the

power conferred by the special provisions in relation to their various subject matters, but gives authority to pass by-laws, reasonable in their character, upon all other matters within the scope of their municipal authority, and not repugnant to the Constitution and general laws of the State.' " See, also, *Buell* v. *The State,* 45 Ark. 336; *Mena* v. *Smith,* 64 Ark. 363, 42 S. W. 831.

Since it is conceded that the City of Stuttgart is in no position to exercise the power to fix building lines by proceeding under Act 295 of 1937, it must be concluded that it was without power to enact the ordinance in question. The right of the city to widen the street and appropriate the property of plaintiff by the exercise of the power of eminent domain is, of course, not involved herein.

The decree of the trial court holding the ordinance invalid is affirmed.