ANTHONY T. ENOS vs. CITY OF BROCKTON.

Suffolk.    February 6, 1968. — May 7, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

Zoning, Validity, Building materials. Building Laws.

A provision of a city's zoning ordinance, that apartment houses "be of
  second class construction," not defined in the zoning ordinance but
  under the city's separate building code requiring masonry walls
  twelve inches thick, was not authorized by §§ 2, 3, of the Zoning
  Enabling Act, G. L. c. 40A, and was invalid as a zoning regulation.

PETITION filed in the Land Court on August 31, 1966.

The case was heard by McPartlin, J.

Thomas G. Dignan, Jr., for the petitioner.

Ralph G. Silverstein, Assistant City Solicitor, for the
respondent.

SPALDING, J.    This petition was brought in the Land
Court under G. L. c. 240, § 14A, and G. L. c. 185, § 1 (j ½),
to determine the validity of § 11B (e) of the zoning ordinance
of the city of Brockton.    The case was heard on a statement
of agreed facts which the judge adopted as his findings.
He ruled that § 11B (e) was valid.    The case is here on the
petitioner's exceptions to this and other rulings.

The petitioner is the owner of a freehold estate in posses-
sion in certain land in the city of Brockton, upon which he
desires to build multiple dwellings.[1]    He has been informed
by the city's building inspector that if he builds multi-
family apartment dwellings upon his property they must
be constructed with twelve-inch thick masonry walls as
required by § 11B (e) of the zoning ordinance.    Section 11B
(e) reads: "All multiple dwellings shall be of second class
construction."    The words "second class construction" are
defined in § 24 of the building code but not in the zoning

[1] "Multiple dwellings" as used in the Brockton zoning ordinance includes
apartment houses.    In his petition the petitioner states that he desires to
construct "multi-family apartment dwellings."

ordinance. It is not disputed that second class construction under the building code requires masonry walls twelve inches thick.

The petitioner's exceptions to the various rulings of the judge raise substantially the same question and will not be dealt with separately. The thrust of these requests is that § 11B (e) of the zoning ordinance is not authorized by the enabling act (G. L. c. 40A, § 2) and is, therefore, void. The respondent concedes that the zoning ordinance is separate and distinct from the building code. Thus § 11B (e) must stand or fall as a regulation authorized by the zoning statutes. The respondent, nevertheless, urges that § 11B (e) falls within the purposes of the zoning enabling provision, as it is designed to promote "the health, safety, convenience, morals or welfare of . . . [the] inhabitants" of a municipality. In particular it is urged that § 11B (e) will aid in the prevention of fire.[2] Although § 11B (e) may in fact serve to accomplish this purpose, its validity here turns upon whether its accomplishment is properly effected through the medium of a zoning regulation of this sort.

As the judge below found, the "purpose and effect of Section 11B (e) . . . is to require a certain type of wall and floor to be utilized in the construction of dwellings of the type which the petitioner is desirous of building on the land owned by him in the City of Brockton." It is clear that § 11B (e) is not authorized by the first paragraph of G. L. c. 40A, § 2.[3]

---

[2] The respondent directs our attention to § 3 of c. 40A which reads: "Zoning regulations and restrictions shall be designed among other purposes to lessen congestion in the streets; to conserve health; *to secure safety from fire,* panic and other dangers; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements; to conserve the value of land and buildings; to encourage the most appropriate use of land throughout the city or town; and to preserve and increase its amenities" (emphasis supplied).

[3] This paragraph reads: "For the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants, any city, except Boston, and any town, may by a zoning ordinance or by-law regulate and restrict the height, number of stories, and size of buildings and structures, the size and width of lots, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, agriculture, residence

The respondent urges that § 11B (e) is authorized by the language of the second paragraph of c. 40A, § 2, which provides that "a zoning ordinance . . . may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, . . . or use of land . . . ." From our examination of the statutory history of § 2 we are of opinion that the second paragraph was not intended to authorize the regulation of the constituent materials of walls and floors by means of a zoning ordinance. These matters are properly the subject of building codes rather than zoning regulations. General Laws c. 143, § 3, provides in part that a city may "regulate the inspection, materials, construction, alteration, repair, demolition, removal, height, area, location and use . . . of buildings and other structures within its limits . . . ." This statute, which authorizes municipal regulation and inspection of building materials, has had a long history. The general features of § 3 were first enacted by St. 1872, c. 243. See *Slack* v. *Inspector of Bldgs. of Wellesley*, 262 Mass. 404, 405. Although the Zoning Enabling Act permits regulation of many of the subjects set forth in the building code enabling act the words "inspection" and "materials" are not employed. It cannot therefore be said that the building code legislation has been superseded by the zoning statutes. See *Inspector of Bldgs. of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85, 88–89.

It should be borne in mind that the purposes and operation of zoning laws and building codes are somewhat divergent. See *Norcross* v. *Board of Appeal of the Bldg. Dept. of Boston*, 255 Mass. 177, 182–183. Whereas the main purpose of zoning is to stabilize the use of property and to protect an area from deleterious uses (*Everpure Ice Mfg. Co. Inc.* v.

or other purposes; provided, however, that no ordinance or by-law which prohibits or limits the use of land for any church or other religious purpose or for any educational purpose which is religious, sectarian, denominational or public shall be valid; and provided, further, that in regulating or restricting the size of such buildings or structures no provision of any ordinance or by-law shall be valid which requires the floor area of the living space of a single-family residential building to be greater than seven hundred and sixty-eight square feet."

*Board of Appeals of Lawrence,* 324 Mass. 433, 435; *Kaplan* v. *Boston,* 330 Mass. 381, 384), a building code "relates to the safety and structure of buildings." See *Norcross* v. *Board of Appeal of the Bldg. Dept. of Boston,* 255 Mass. 177, 182; *Rice* v. *Board of Appeals of Dennis,* 342 Mass. 499, 500; *Turner* v. *Board of Appeals of Milton,* 305 Mass. 189, 192.

There is the added fact that the amending process of zoning ordinances or by-laws differs in many respects from that of building codes. Changes in zoning ordinances or by-laws usually require a two-thirds vote of the municipal law making body, and in some instances a three-fourths or even unanimous vote is required. (See G. L. c. 40A, § 7.) There are also in such cases provisions for a hearing before the planning board and a report by the board to the legislative body. G. L. c. 40A, § 6. If a proposed change is rejected, the matter, subject to certain exceptions, may not be reconsidered for two years. (See G. L. c. 40A, § 8.)[4] It thus is apparent that zoning regulations are intended to have a certain degree of permanency, as evidenced by the fact that they are more difficult to amend than most other by-laws and ordinances. A building code, on the other hand, is much more flexible as a result of the broad provisions of c. 143, § 3. See *O'Donnell* v. *Board of Appeals of Billerica,* 349 Mass. 324. It is in the public interest that this should be so in order to take advantage of improvements in building materials and safety standards. But if zoning ordinances or by-laws served as building codes, outmoded methods of construction would become difficult to change because of the more cumbersome methods prescribed for zoning amendments. These considerations point, we think, to the conclusion that the Legislature did not intend to authorize the combining of building codes with zoning ordinances or by-laws. See *Betty-June School, Inc.* v. *Young,* 201 N. Y. S. (2d) 692 (S. C. N. Y.). We have not overlooked the language in G. L. c. 40A, § 3 (see footnote 2), that one of the purposes of zoning regulations is to "secure

---

[4] The granting of variances is carefully regulated. See G. L. c. 40A, §§ 17, 20.

safety from fire." Our construction of § 11B (e) does not render this language meaningless, for "safety from fire" can be secured, at least to some extent, by lot sizes, setback requirements, and similar zoning provisions.

Accordingly, we are of opinion that the petitioner's exceptions must be sustained. The decision of the Land Court is reversed, and a new decision is to be entered declaring that § 11B (e) as part of the Brockton zoning ordinance is invalid.

It is apparent that Brockton intended that multiple dwellings be of second class construction. To afford the city, if so advised, opportunity to adopt appropriate provisions of a building code, the new decision will not be entered until after the expiration of sixty days from the date of the rescript.

*So ordered.*