594 A.2d 1131

The COUNCIL OF CHEVY CHASE VIEW

v.

George K. ROTHMAN et al.

No. 57, Sept. Term, 1990.

Court of Appeals of Maryland.

Sept. 6, 1991.

Stephen W. Swartz (James D. Dalrymple, Linowes and Blocher, all on brief), Silver Spring, for appellant.

Patrick C. McKeever (Miles & Stockbridge, both on brief), Rockville, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

MURPHY, Chief Judge.

Chevy Chase View is a special taxing district in Montgomery County created by the General Assembly of Maryland by ch. 541 of the Acts of 1924; the substance of that act, with amendments, is now codified as ch. 64 of the Montgomery County Code (1984), §§ 64–1 through 64–11. Section 64–10(a), in its present form, empowers the council of Chevy Chase (the council), subject to the approval of the County Council of Montgomery County (the County Council), to adopt

> "such regulations with respect to dumping of garbage, sanitation, *erection of buildings*, tearing up of streets, operation of vehicles, removal of snow and ice or other police or health matters as the council deems necessary for the welfare and government of Chevy Chase View.

The council also is empowered to adopt reasonable and proper penalties for violations of the regulations governing Chevy Chase View; and the council may, in addition to enforcing such regulations by criminal prosecution, bring suit in the circuit court of Montgomery County, in the name of the council of Chevy Chase View, for which purpose said council shall be deemed a body corporate, to obtain a decree, order or judgment of that court compelling, by injunction or otherwise, compliance by any person with such regulations." [1]  (Emphasis added.)

Approval to implement the provisions of § 64–10(a) was initially given in 1925 by the then governing authority of Montgomery County (the County Commissioners) when it approved what is now § 13(c) of the Chevy Chase View "Building Regulations"; that regulation provided:

"It shall be unlawful for any person or persons to erect any building or to make any material additions or alterations to any existing buildings, except under the following conditions:

\* \* \* \* \* \*

No part of any dwelling, including a built-in garage, shall be erected within fifteen (15) feet of a sideline or within twenty-five (25) feet of the rear line; and no garage, shed or other outbuilding which is not built-in, shall be erected within less than seven (7) feet of a side or rear line."

This minimum building setback restriction was enacted pursuant to the council's purported authority under § 64–10(a) to adopt regulations for the "erection of buildings." It has remained, virtually unchanged, as a part of Chevy Chase View's Building Regulations since its original enactment in 1925.[2]

---

**1.** Section 64–10(b) provides that the council could "sue and be sued and for this purpose shall be deemed to be a body corporate."

**2.** In addition to regulating building setback lines, § 13 requires that all buildings be used for one-family residential purposes only; that there be off-street parking and a driveway for each dwelling; and that the parking spaces and driveways be so drained as to prevent damage

## I.

In May of 1989, George Rothman and Connave Partnership (Rothman) applied for and was granted a building permit by Montgomery County to construct a house on property within Chevy Chase View. During the early stages of construction, the council advised Rothman that he was in violation of § 13(c)'s setback regulation. When Rothman refused to stop construction, the council, on July 21, 1989, sought to enjoin the claimed violation by suit filed in the Circuit Court for Montgomery County. Rothman moved to dismiss the complaint, alleging that the minimum setback regulation of § 13(c) constituted a zoning regulation which the council was not authorized to enact; that it conflicted with the less restrictive building setback provisions of the Montgomery County zoning Ordinance and was therefore invalid; and that in any event building setback restrictions have nothing to do with the "erection of buildings," within the contemplation of § 64–10(a).

In response to Rothman's motion, the council acknowledged that it is without authority to adopt zoning regulations. It maintained, however, that § 13(c) is not a zoning restriction but is a building regulation adopted with the express approval of the County Council, pursuant to authority vested in the council under § 64–10, to regulate "the erection of buildings ... or other police or health matters as the council deems necessary for the welfare and government of Chevy Chase View." The council argued that both zoning ordinances and building codes may regulate the erection and location of buildings to ensure the provision of sufficient light and air, and to reduce fire hazards, and that setback restrictions may be adopted either as part of a zoning ordinance or as part of a building code. The council maintained that the Montgomery County Zoning Ordinance, ch. 59 of the Montgomery County Code, permits the regula-

---

to abutting properties and constructed of an erosion resistant material. Subsection (g) provides criminal penalties for violation of these regulations by way of fine, or imprisonment, or both.

tion by a special tax district of some matters otherwise regulated through the county zoning ordinance. In this regard, the council noted that § 59–A–2.2 of the county zoning ordinance prescribes only minimum building setback requirements and expressly provides that these requirements shall not interfere with other ordinances or regulations prescribing stricter standards, as in Chevy Chase View.

The court (Ruben, J.), after a hearing but without filing an opinion, granted Rothman's motion to dismiss. The council appealed to the Court of Special Appeals; we granted certiorari prior to decision by that court to consider the significant issue of public importance presented in the case.

## II.

There are a number of special taxing districts in Montgomery County, most of which, like Chevy Chase View, were created in the early part of this century by public local laws enacted by the General Assembly of Maryland. These enactments authorized the districts to exercise various express powers within their respective areas and to implement them by the adoption of regulations, subject to the approval of the governing authority of Montgomery County. *See, e.g.,* Montgomery County Code (1984), ch. 62 (Chevy Chase Section 3, also known as The Village of Chevy Chase); ch. 65 (Drummond); ch. 66 ("Friendship Heights" and "The Hills"); ch. 67 (Martin's Additions); ch. 69 (North Chevy Chase); and ch. 70 (Oakmont).

The legislation under which the special taxing districts function generally provided for popular election of members of their governing bodies. Some, like The Village of Chevy Chase, were expressly authorized to impose real estate taxes and levy assessments for improvements upon property within their respective districts for the purpose of maintaining roads, sidewalks, and similar purposes, and to utilize all funds authorized to be collected for their legislatively mandated purposes. More specifically, in Chevy Chase

View, § 64–6 provided that the funds so collected could be used, *inter alia*, for the removal of snow, ashes, garbage, and other refuse and "for enforcing such building, sanitary and other regulations for the welfare and government of Chevy Chase View as the council may prescribe in accordance with § 64–10." That section, as earlier noted, authorizes Chevy Chase View to adopt regulations with respect to "dumping of garbage, sanitation, *erection of buildings*, tearing up of streets, operation of vehicles, removal of snow and ice or other police or health matters." (Emphasis supplied.) Virtually this same provision is included in the enabling legislation in effect in the Village of Chevy Chase, Friendship Heights and The Hills, Martin's Additions, North Chevy Chase, and Oakmont.

Purporting to act in pursuance of the powers vested in it by the General Assembly, and first approved by Montgomery County's governing authority in 1925, the council of Chevy Chase View adopted a number of regulations. In addition to § 13(c)'s regulation of building setback lines, other regulations enacted by the council under the caption "Building Regulations" required that all structures within the district be built and used only for one-family residential purposes; other regulations imposed certain parking requirements and prohibited obstructions and excavations upon sidewalks or in parking areas within designated time periods. Regulations of Chevy Chase View adopted under the heading "Public Service and Police Regulations" made it unlawful to disturb the peace by discharging firearms; to disturb public meetings; to loiter; to obstruct members of the council in carrying out their duties; to leave glass on the roads; to litter in the area; and to deface street signs. The regulations of these special tax districts are contained in vol. 3 of the Montgomery County Code (1984), Appendix M, at 11295—11377.

In 1924 when the General Assembly created Chevy Chase View, and in 1925 when the County Commissioners of Montgomery County first approved Chevy Chase View's regulations, Montgomery County had no authority to zone

and had not enacted a comprehensive building code. Thereafter, by ch. 448 of the Acts of 1927, the General Assembly created the Maryland–Washington Metropolitan District, embracing parts of Montgomery and Prince George's Counties, and placed it under the jurisdiction of the Maryland–National Capital Park and Planning Commission. Section 4 of that Act required the Commission to make a plan for the physical development of the Metropolitan district, including a zoning plan for the control of the height, area, location, and use of buildings, including the power to establish building setback lines. It authorized the County Commissioners of Montgomery County, sitting as a district council and acting within the provisions of the Act, to restrict the "location of buildings" and related matters. Section 21 of the Act provided that if any of the regulations adopted by the County Commissioners imposed more stringent standards than other existing state or local laws, the former would prevail. Section 22 of the Act specifically dealt with the establishment by the County Commissioners of building setback lines and provided that if any such regulations adopted by the County Commissioners were more stringent than those required by other laws, including "other local regulations," the former would prevail.

Chapter 703 of the Acts of 1927 authorized the County Commissioners of Montgomery County to make rules and regulations for the construction of buildings and the employment of a building inspector. This Act provided authority to enact a building code but contained no "conflict" provision with other existing laws.[3]

Pursuant to ch. 448 of the Acts of 1927, a zoning ordinance of the Maryland–Washington Metropolitan District in Montgomery County was adopted by the County Commissioners on March 6, 1928. It was repealed and reenacted, with amendments, on October 28, 1930. The ordinance, among other things, gave broad zoning powers to the

---

**3.** The building code of Montgomery County is now codified as ch. 8 of the Montgomery County Code.

County Commissioners, including the power to regulate building lines beyond which the foundation wall of a building could not project, to regulate the location of buildings, height, bulk, and areas of yards and open spaces. Section X of the 1930 ordinance declared that, in interpreting and applying the ordinance, "the requirements contained herein are declared to be the minimum requirements for the protection of the health, morals, safety or welfare ... [and] shall not be deemed to interfere with or abrogate or annul or otherwise affect in any manner whatsoever any easements, covenants, or other agreements between parties." This section further provided that where the ordinance "imposes a greater restriction upon the use of buildings or premises or upon the height of buildings or requires larger open spaces than are imposed or required by other ordinances, rules, regulations or permits, or by easements, covenants, or agreements, the provisions of this ordinance shall control."

By § 12 of ch. 599 of the Acts of 1933, the counties were vested with broad zoning authority, it being provided in § 26 that whenever the regulations made under the Act were more restrictive than required by any other statute or local ordinance, or regulation, the former would govern. Section 26 further provided that whenever the latter regulations were more stringent, they would be deemed supplemental and would govern under their own provisions.

Chapter 714 of the Acts of 1939 amended the laws relating to the Maryland-Washington Metropolitan Regional District. By § 16 of that Act, the County Commissioners of Montgomery County were empowered to regulate the location, height, bulk and size of buildings and other structures, building lines, minimum frontages, depth and areas of lots, and percentages of lots which may be occupied, the sizes of yards, courts and open spaces, the density and distribution of population, the uses of buildings for trade, industry, residence, and other purposes. It was also provided in § 17 of that Act that the County Commissioners could "regulate the erection ... and uses of buildings." Section 18 provid-

ed that the regulations enacted by the County Commissioners, consistent with the Act's provisions, if more restrictive, would prevail over any state or local regulations.

By ordinance dated September 30, 1941, enacted by the County Commissioners of Montgomery County pursuant to ch. 714 of the Acts of 1939, the county's 1930 zoning ordinance was reenacted with amendments. The ordinance contained detailed zoning regulations governing, *inter alia*, the erection and location of buildings, and of building setback lines. This ordinance contained no provision relating to conflicts with other laws, as did the earlier zoning ordinances.

By ch. 213 of the Acts of 1947, the General Assembly repealed the original 1924 Act creating Chevy Chase View; in its place, it enacted eleven new sections which largely tracked the substantive provisions of the repealed Act. No change was made in the language of § 64–10, which authorized Chevy Chase View to adopt regulations.

In 1948, Montgomery County adopted a Home Rule Charter and became subject to the provisions of the Express Powers Act, Maryland Code (1990 Repl.Vol.), Article 25A, § 5. Section 5(O) empowered the county to establish, modify, amend, or abolish special taxing districts, except as to "the modification or abolition of existing special taxing areas performing municipal services .. and governed or administered by a citizen's committee or a commission elected or appointed independently of the county council."

By ch. 63 of the Acts of 1951, the General Assembly repealed and reenacted, with amendments, the laws relating to Chevy Chase View. The amendment reflected that the County Council, rather than the County Commissioners, was the approving authority of Chevy Chase View's regulations under § 64–10. No other change was made in the language of that section by ch. 63 of the 1951 Act. Thereafter, on July 7, 1953, the County Council approved the regulations of Chevy Chase View, including the provisions of § 13(c).

In 1956, this Court decided *Perry v. Board of Appeals,* 211 Md. 294, 127 A.2d 507 (1956). That case involved the special taxing district of the Village of Chevy Chase which the General Assembly created by ch. 566 of the Acts of 1914. Pursuant to authority almost identical to that granted to Chevy Chase View by § 64–10 to regulate the erection of buildings, the Village adopted regulations which provided that no building "shall be erected" unless for a one-family dwelling built and used exclusively for residential purposes. A property owner within the Village sought a special exception under the county zoning ordinance to operate a care home in an existing building in a residential zone. The issue in the case was whether a special exception could be granted in the face of the Village's regulation which prohibited the use of property for other than a single-family dwelling.

We first considered whether, in case of conflict between the state or county law on the one hand, and the Village's regulations on the other, which law would prevail. The Village claimed that its restriction on the use of residential properties in the Village was more restrictive than the county ordinance and thus was not in conflict with it. Moreover, the Village urged that it had the power to zone by reason of its original grant of legislative power in 1914 to enforce "building ... and other regulations" and, as approved by the County Commissioners, to adopt regulations with respect to the "erection of buildings" as well as "other police or health regulations."

We rejected the argument that the Village had the power to zone, or that its power to enact "police or health regulations" vested such complete authority in the Village as empowered it to prohibit all but residential use of property. 211 Md. at 302, 127 A.2d 507. We said that the Village "had no inherent police power" but only that which the legislature expressly delegated to it, or which was necessarily implied or incident to the powers expressly granted. *Id.* at 303, 127 A.2d 507. We concluded that the power to zone must be expressly given by the legislature and that no such

power was vested in the Village. As to this, we said: "[t]he legislative intent in giving the power to 'regulate the erection of buildings' was to authorize the kind of regulation inherent in the concept of a building code." *Id.* at 304, 127 A.2d 507. We then observed that a statute which allowed a municipal corporation to regulate the building or the erection of houses "does not authorize it to enact zoning ordinances or to establish setback lines," *id.* at 305, 127 A.2d 507, citing *City of Stuttgart v. Strait,* 212 Ark. 126, 205 S.W.2d 35 (1947). We concluded that the exercise of power by the Village beyond that delegated by the legislature could not be ratified by the County Commissioners and that their approval of the regulations in 1938, to the extent that they were *ultra vires,* added nothing to their validity. *Id.*

In 1957, in an opinion by the Circuit Court for Montgomery County (Anderson, J.), it was held that Chevy Chase View's building setback regulations under § 13(c) were valid and effective notwithstanding the less restrictive setback provisions of the county zoning ordinance.[4] The court there said that while Chevy Chase View did not possess zoning authority, it was empowered by state law, with the approval of the County Council of Montgomery County, to establish setback lines as a building code regulation in furtherance of its authority over the "erection of buildings"; and because § 13(c) did not conflict with the minimum requirements of the county zoning ordinance, its provisions were enforceable. No appeal was taken from that judgment.

After these court decisions, ch. 780 of the Acts of 1959 (the Regional District Act) was enacted, as was ch. 892 of the Acts of 1975, which transferred various zoning laws applicable in the Regional District to new Article 66D of the Maryland Code, entitled "Maryland–National Capital Park and Planning Commission." In 1983, these laws were recodified in Maryland Code (1990 Repl.Vol.), Article 28, and in particular in Title 7 (Maryland–Washington Regional Dis-

---

**4.** *See* Chevy Chase View v. Edmund F. Hull, Equity No. 17757, decided on February 18, 1957.

trict), §§ 7–101 to 7–120, and Title 8 (District Councils for Regional District), §§ 8–101 to 8–125.[5]

In *Northampton v. Pr. George's Co.*, 273 Md. 93, 96, 327 A.2d 774 (1974), we made clear that the Regional District Act is now the exclusive source of zoning authority in Montgomery County and that any enactment concerning zoning in the county, which is at variance with the Regional District Act, is inoperative within the district. Thus, the Express Powers Act, Code, Article 25A, § 5(X), authorizing chartered counties to enact laws relating to zoning and planning, has no application in Montgomery County, see § 5 of ch. 70 of the Acts of 1975, as long as the Regional District Act remains in force and effect.

### III.

As we earlier noted, Rothman's motion to dismiss the council's injunction action was granted without an opinion. The parties agree, however, that the trial judge necessarily concluded either that the council lacked authority to enact § 13(c) or that the county zoning ordinance preempted the council's building setback regulations imposed by § 13(c). In accepting this premise, the council contends that Judge Ruben was wrong on both grounds, while Rothman says that he was right on each ground. We think Rothman enjoys the better of the argument.

It is true that Chevy Chase View's regulation § 13(c) governing building setback lines has been in effect, with the approval of the governing authority of Montgomery County, for almost three-quarters of a century. However, as we

---

5. By Resolution 5–1702A, adopted March 2, 1965, the County Council of Montgomery County declined to approve an unspecified amendment to § 13(c) of Chevy Chase View's regulations; it also rescinded its prior approval of the entirety of § 13 "insofar as there is any conflict" between § 13 and the zoning ordinance of Montgomery County and the Regional District Act. Three years later, by Resolution 6–1351, the County Council rescinded its earlier resolution and approved the regulations adopted by the council of Chevy Chase View on July 15, 1964, thereby leaving intact the language of § 13(c) as it now reads.

said in *Perry v. Board of Appeals, supra,* 211 Md. at 304, 127 A.2d 507, the legislative intent in giving a special taxing district the power to adopt regulations with respect to the erection of buildings "was to authorize the kind of regulation inherent in the concept of a building code." Thus, if the establishment of building setback lines is not inherently within the concept of a building code, the provisions of § 64–10, neither expressly or impliedly, empower the council to enact the setback restrictions.

According to Yokely, *Zoning Law and Practice,* § 31–1 (4th ed. 1980), building codes relate "to the construction, maintenance and repair of buildings"; otherwise stated, building codes relate "to the safety and structure of buildings." They are designed primarily to regulate internal construction, rather than external appearances. *Id.* at 193–95. *See Enos v. City of Brockton,* 354 Mass. 278, 236 N.E.2d 919 (1968) (building codes are primarily concerned with the safety features of structures). Anderson, *American Law of Zoning,* § 9–56 (3rd ed. 1986) says that the authority to regulate building setback lines "is normally exercised as part of the zoning power." Further in this section it is said that the power to adopt a building code does not include authority to impose building setback restrictions, citing *Town of Waterboro v. Lessard,* 287 A.2d 126 (Me.1972). That case involved a town ordinance establishing building setback lines enacted pursuant to a state law which authorized the enactment by the town of "police power ordinances" pertaining to buildings and structures. The state law authorized the town to regulate the design, construction, and construction material of buildings and, *inter alia,* to regulate their alteration, maintenance, repair, and safety features. After noting that establishing building lines is part of the zoning process, and that the town had no zoning ordinance authorizing it to regulate the location and use of property, the court held that the establishment of building setbacks could not be regulated under the town's ordinance. It said that the location of buildings and of building setback lines is a matter of zoning, rather

than for a building code, and was therefore beyond the town's authority to enact. In support of its holding, the court relied upon *City of Stuttgart v. Strait, supra* (absent a zoning ordinance, the city had no authority to establish building setbacks under a building code ordinance) and *Kipp v. Incorporated Village of Ardsley,* 13 A.D.2d 1012, 216 N.Y.S.2d 893 (1961) (authority under a building code to regulate the construction of buildings did not include the power to regulate or restrict the distance of structures from the street or building line). McQuillin, *Municipal Corporations,* § 24–541 (3rd ed. rev.1989) espouses the same principle.

Consistent with these authorities, and as we earlier noted, we said in *Perry, supra,* 211 Md. at 305, 127 A.2d 507, that the express power vested in a special tax district to enforce "building ... and other regulations," including regulations with respect to the "erection of buildings" and "other police or health regulations," did not authorize it "to enact zoning ordinances or to establish setback restrictions." We thus disagree with the 1957 decision of the Circuit Court for Montgomery County that Chevy Chase View was authorized to establish setback lines as a building code regulation in furtherance of its authority over the "erection of buildings."

In so concluding, we recognize that the power to regulate building lines has been granted in some states other than through the zoning process. For example, in *Village of Wind Point v. Halverson,* 38 Wis.2d 1, 155 N.W.2d 654, 657 (1968), it was held that while a building setback restriction may be validly enacted within a zoning ordinance, it may also be adopted "as a building restriction or part of a building code, pursuant to [a] statutory general grant of power." The court explained:

> "The dividing line between a zoning regulation and a building code regulation is not easily drawn. These are two closely related facets of police power regulation. Both are designed to promote public safety, health and welfare."

*Id.*  To like effect, *see Town of Jaffrey v. Heffernan,* 104 N.H. 249, 183 A.2d 246, 249–50 (1962); *Howell v. Liebowitz,* 116 N.Y.S.2d 537, 541 (1952); *Van Auken v. Kimmey,* 141 Misc. 105, 252 N.Y.S. 329 (1930).

The principle set forth in these cases is bottomed on a clear statutory grant of authority to regulate building set-back lines other than by a zoning ordinance.  In view of *Perry,* the power vested in the council to adopt regulations with respect to the erection of buildings does not extend to fixing building lines.  Consequently, no matter how venerable the provisions of § 13(c) may be, and notwithstanding repeated approval of that subsection by the governing authority of Montgomery County, the council's adoption of that regulation was beyond the authority granted to it by the General Assembly and is, therefore, invalid.  *See Perry,* 211 Md. at 305, 127 A.2d 507.  *Cf. Supervisor v. Chase Associates,* 306 Md. 568, 510 A.2d 568 (1986) and *Macke Co. v. Comptroller,* 302 Md. 18, 485 A.2d 254 (1984) (both cases striking down longstanding administrative regulations which were beyond the clear import of the authorizing statute).

JUDGMENT AFFIRMED, WITH COSTS.