Gordon R. McDOWELL, Jr. and Carol
A. McDowell, Plaintiffs–Appellants,

v.

UNITED STATES of America, Substitute
Defendant and Third–Party Plaintiff–
Appellee.

No. 92CA2040.

Colorado Court of Appeals,
Div. III.

Feb. 24, 1994.

Law Office of Peter A. Ricciardelli, Peter A. Ricciardelli, Telluride, for plaintiffs-appellants.

James W. Brannigan, Jr., U.S. Atty., Mary C. Lundberg, Asst. U.S. Atty., San Diego, CA, for substitute defendant and third-party plaintiff-appellee.

Opinion by Judge DAVIDSON.

Plaintiffs, Gordon R. and Carol A. McDowell, appeal from the summary judgment dismissing their claim for enforcement of a setback requirement against defendant, United States of America, on the grounds that the action is barred by the applicable statute of limitations. We affirm.

Plaintiffs, residents of Salt Lake City, Utah, are the owners of lot 5 in the Last Dollar Planned Unit Development (Last Dollar PUD) in San Miguel County, Colorado. They acquired the lot from the developer, Last Dollar Limited Partnership, in 1976.

Defendant, United States of America, is the owner of lot 6, adjoining plaintiffs' lot, in the Last Dollar PUD. Defendant acquired lot 6 in a forfeiture action against the prior owners in April 1992.

The recorded plat of the Last Dollar PUD requires a twenty-foot setback area, as measured from lot lines, within which no improvements may be located. This requirement is not contained within the protective covenants governing the subdivision.

In the early 1980's, the prior owners of lot 6 began construction on a house which was completed in 1982. The house and several other related improvements encroach within the twenty-foot setback area, and may even extend onto lot 5.

Plaintiff Gordon McDowell stated that he visited lot 5 in 1982, but did not see any improvements upon lot 6 at that time. He discovered the encroachments during a visit to lot 5 in 1988. Concerned because the improvements appeared to intrude into the suitable building area of lot 5, he obtained a survey of the property. According to the survey, the improvements on lot 6 violated the twenty-foot setback requirement and extended onto lot 5.

Plaintiffs attempted to negotiate a resolution to the problem with the prior owners. When no agreement could be reached, plaintiffs directed their counsel to commence legal action in March 1989. Shortly afterward, plaintiffs' counsel experienced severe health problems, but although he had resumed his law practice by August 1989, suit was not filed until May 1990.

The complaint alleged violation of the twenty-foot setback requirement and trespass. In relation to the setback claim, plaintiffs sought both equitable relief, in the form of removal of the encroaching improvements, and money damages.

During the pendency of this litigation in the trial court, defendant acquired ownership of lot 6 and was substituted as defendant. Defendant filed a motion for partial summary judgment on the setback claim only, asserting that plaintiffs' action was time barred by the one-year statute of limitations set forth in § 38–41–119, C.R.S. (1982 Repl.Vol. 16A).

The trial court found in favor of defendant and granted summary judgment dismissing plaintiffs' setback claim. Pursuant to C.R.C.P. 54(b), the trial court certified the judgment as final for purposes of appeal. Further proceedings regarding plaintiffs' trespass claim have been stayed by order of the trial court pending the outcome of this appeal.

Plaintiffs' argue that the trial court erred by applying § 38–41–119 to their setback claim. We disagree.

### I.

According to § 38–41–119:

No action shall be commenced or maintained to enforce the terms of any building restriction concerning real property or to compel the removal of any building or improvement on land because of the violation of any terms of any building restriction unless said action is commenced within one year from the date of the violation for which the action is sought to be brought or maintained.

Applying a "discovery rule" to the above statute of limitations, the trial court found that plaintiffs' cause of action accrued no later than October 1988, when Gordon McDowell received a copy of the survey report confirming that portions of the lot 6 house encroached into the twenty-foot setback area and possibly into lot 5.

The "discovery rule" is a principle applied to actions in tort which provides that the statute of limitations will not begin to run until the injured party discovers, or through the exercise of reasonable diligence, should have discovered the wrongful act. *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993). This rule seeks to alleviate the manifest unfairness of foreclosure of a cause of action before there has been a reasonable opportunity to discover its existence. *Austin v. Litvak,* 682 P.2d 41 (Colo.1984).

Colorado courts have applied the discovery rule to various causes of action, even if the applicable statute makes no explicit reference to the "discovery" of the wrongful conduct. *See Miller v. Armstrong World Industries, Inc.,* 817 P.2d 111 (Colo.1991) (products liability); *Rauschenberger v. Radetsky,* 745 P.2d 640 (Colo.1987) (wrongful death); *Financial Associates, Ltd. v. G.E. Johnson Construction Co.,* 723 P.2d 135 (Colo.1986) (negligence or defects in improvements to real property); *Austin v. Litvak, supra* (medical malpractice); *Stjernholm v. Life Insurance Co.,* 782 P.2d 810 (Colo.App.1989)

(conversion based upon payment of instrument on forged endorsement).

As the trial court noted, here, it could be argued that the date of the violation, which at the latest would be the date of completion of the construction on lot 6, should govern rather than the date of discovery. We need not determine which date is operative, however, as we agree with the trial court that, even if the cause of action accrued in October 1988, commencement of the lawsuit in May of 1991 was tardy, and plaintiffs' claims are barred by the one-year statute of limitations.

### II.

Plaintiffs first argue that the trial court erred in applying § 38–41–119 because the setback requirements of the Last Dollar PUD plat are in the nature of zoning ordinances and therefore are not building restrictions concerning real property. We disagree.

Although raised by plaintiffs in their opposition to defendant's motion for summary judgment, the trial court did not address this threshold question. If the setback requirements are not building restrictions concerning real property, then plaintiffs would be correct in asserting that § 38–41–119 does not bar their claim.

We agree with plaintiffs insofar as they contend that a planned unit development, duly adopted and approved by a local government entity, represents a form of rezoning for the area within the PUD because the adoption of the PUD provides a method for allowing a diversity of uses which may not have been included within the original zoning designations. *See South Creek Associates v. Bixby & Associates, Inc.,* 781 P.2d 1027 (Colo.1989); *Tri–State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670, 677 (Colo.1982) ("While traditional zoning establishes fixed uses and requirements applicable to specified areas of the city, the PUD concept allows the municipality to control the development of individual tracts of land by specifying the permissible form of development in accordance with the city's PUD ordinance.")

Ample authority exists for the tenet that adoption of a planned unit development by a local government entity is a rezoning of the included area. *See Ford Leasing Development Co. v. Board of County Commissioners,* 186 Colo. 418, 528 P.2d 237 (1974); *Moore v. City of Boulder,* 29 Colo.App. 248, 484 P.2d 134 (1971). Only one case in Colorado, however, discusses the nature of setback requirements contained in a PUD plat in the context of applying a statute of limitations for actions to enforce such requirements. That authority determined that such requirements are building restrictions concerning real property and are subject to § 38–41–119. *See Styers v. Mara,* 631 P.2d 1138 (Colo.App.1981).

Plaintiffs' argue that *Styers v. Mara, supra,* is not controlling because the setback requirements in that case were contained in the restrictive covenants of the development as well as the provisions of the PUD plan, but here, the setback requirements are not contained within the restrictive covenants of the development. We are not persuaded that the *Styers* holding rests on any such distinction.

In that case, the plaintiffs were homeowners within a development which contained a designated "green belt" area. Pursuant to the PUD plan and the restrictive covenants, no improvements were to be placed within a twenty-foot setback from the green belt area. The plaintiffs sued to require several of their neighbors to remove improvements which encroached into the twenty-foot setback. A panel of this court concluded that the setback requirement was a building restriction concerning real property and did not specify that this determination was based solely upon the setback requirement as contained in the restrictive covenants as opposed to the PUD plan. *See Styers v. Mara, supra.*

We are similarly unpersuaded by plaintiffs' other argument for distinguishing the *Styers* holding, which is that because the "green belt" area represented a setback itself, the further twenty-foot setback requirement was a "setback from a setback." We do not observe any perceptible difference between this and the setback requirement here. Both are restrictions as to how close to a particu-

lar property line a lot owner may place improvements.

■ Neither are we convinced that *Styers v. Mara, supra,* was wrongly decided. We note that although setback requirements are frequently enacted in the form of a zoning ordinance, *see Landmark Universal, Inc. v. Pitkin County Board of Adjustment,* 40 Colo.App. 444, 579 P.2d 1184 (1978), setback requirements are not necessarily zoning matters. *Kipp v. Incorporated Village of Ardsley,* 216 N.Y.S.2d 893, 13 A.D.2d 1012 (1961); *see also Town of Jaffrey v. Heffernan,* 104 N.H. 249, 183 A.2d 246 (1962). The power to establish setback requirements is distinct from zoning power and may have its source in some other grant of authority. *See Council of Chevy Chase View v. Rothman,* 323 Md. 674, 594 A.2d 1131 (1991); *Howell v. Liebowitz,* 116 N.Y.S.2d 537 (Misc.1952). Thus, a setback requirement may be adopted as a building restriction or as part of a building code. *Village of Wind Point v. Halverson,* 38 Wis.2d 1, 155 N.W.2d 654 (1968).

■ Accordingly, we agree with the *Styers* court that a setback requirement contained within a duly adopted PUD plat is a building restriction concerning real property as contemplated by § 38–41–119. *Cf. Nicol v. Nelson,* 776 P.2d 1144 (Colo.App.1989) (applying § 38–41–119 to action to enjoin building in green belt area).

### III.

Plaintiffs also argue that, even if § 38–41–119 is applicable, it serves to bar only their claim for equitable relief for removal of the encroaching improvements and does not affect their claim for money damages. We disagree.

### A.

Plaintiffs contend that, by its plain terms, § 38–41–119 applies only to actions to compel removal of an offending structure or, as pertinent here, to "enforce" a building restriction, in the sense of preventing or enjoining the construction of an offending structure. Because these are actions which are equitable in nature, according to plaintiffs, § 38–

41–119 does not bar an action at law for money damages incurred because of the existence of an offending structure. We do not agree that the term "enforce" can be so narrowly interpreted.

■ "The construction of a statute is a question of law." *Colorado Division of Employment & Training v. Parkview Episcopal Hospital,* 725 P.2d 787, 790 (Colo.1986). The words used within a statute should be construed according to their familiar and generally accepted meaning. *Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973).

A definition of "enforce" which refers solely to injunctive or other preventative measures of relief is at odds with the generally accepted meaning of the word. "Enforce" is defined as: "To put into execution; to cause to take effect; to make effective; as, to enforce a particular law, a writ, a judgment, or the collection of a debt or fine; to compel obedience to." *Black's Law Dictionary* 474 (5th ed. 1979).

To enforce a particular criminal statute, for example, punishment by imprisonment or fine after the fact of the crime must be available. Similarly, as regards contractual obligations, the word "enforce" embraces a remedy of money damages, as well as equitable relief. *See* J. Calamari & J. Perillo, *The Law of Contracts* § 1–11 at 18 (3d ed. 1987) ("When a promisee is entitled to either a money judgment, an injunction or specific performance because of a breach, the contract is said to be enforceable.").

This interpretation becomes quite intelligible when comparing the meaning of "enforce" with one of its close synonyms, "implement." "Enforce refers to requiring operation, observance, or protection of laws, orders, contracts, and agreements by authority ... implement suggests performance of such acts as are necessary to bring into actual effect or operation some agreed-on plan or measure." *Webster's Third New International Dictionary* 751.

■ Section 38–41–119 does not speak in terms of actions to "implement" building restrictions, which would logically apply only to such acts as are necessary to bring into actual effect or operation the building restrictions, such as injunction to prevent or remove construction. Section .38–41–119 instead operates regarding actions to "enforce" building restrictions, and therefore, we conclude that the statute includes all forms of available relief, whether equitable or in form of money damages.

To construe "enforce" in the manner suggested by plaintiff would, in effect, constrict the word to less than its full, ordinary meaning. Because a strained, forced, subtle, or unusual interpretation of a word should not be employed if the statutory language is plain, clear, and without absurdity, we decline to adopt plaintiffs' interpretation. *See Harding v. Industrial Commission, supra; South Park Aggregates, Inc. v. Northwestern National Insurance Co.,* 847 P.2d 218 (Colo. App.1992).

B.

The plain language of the statute prohibits "any action." The reasonable interpretation of "any action" supports the conclusion that § 38–41–119 prohibits both actions in equity and actions at law for damages.

The General Assembly elsewhere has distinguished between actions in equity and actions for damages. *See* § 6–2–111(1), C.R.S. (1992 Repl.Vol. 2) ("Any person ... may maintain an action to enjoin a continuance of any act in violation of sections 6–2–103 to 6–2–108 or section 6–2–110 and, if injured thereby, for the recovery of damages."); § 28–3–611, C.R.S. (1989 Repl.Vol. 11B) ("If any employer fails to comply with the foregoing, the employee may, at his election, bring an action at law for damages for such noncompliance or apply to the district court for such equitable relief as is just and proper under the circumstances.")

Had the General Assembly intended to limit the effect of § 38–41–119 to equitable actions, it could have done so as it has under other circumstances. *See* § 7–55–111(3), C.R.S. (1986 Repl.Vol. 3A) ("The attorney general is hereby authorized to bring an

equitable action ... to enjoin any such person ... so using the word 'cooperative' ... in violation of this section."); § 25–12–104, C.R.S. (1989 Repl.Vol. 11A) ("Whenever there is reason to believe that a nuisance exists ... any resident of the state may maintain an action in equity ... to abate and prevent such nuisance and to perpetually enjoin the person conducting or maintaining the same ... from directly or indirectly maintaining or permitting such nuisance."). To the contrary, we conclude that § 38–41–119 was meant to apply to any action to enforce a building restriction, regardless of the nature of the relief requested.

## C.

██ Even if the language of the statute does not explicitly bar any action not timely filed, we agree with the trial court that the nature of the right which plaintiffs sought to exercise controls the applicability of the statute of limitations. Therefore, the fact that they wished to claim alternative forms of relief is not pertinent to this determination.

The trial court found that § 38–41–119 barred any type of relief sought as a result of the encroachment within the twenty-foot setback area because, according to *Association of Owners v. Otte,* 38 Colo.App. 12, 550 P.2d 894 (1976), it is the nature of the right sued upon and not the nature of the relief demanded which governs the applicability of a statute of limitations. Plaintiffs contend that the *Otte* rule is inapplicable because it holds only that a single remedy is barred by a statute of limitations, notwithstanding that the substantive right underlying the cause of action is drawn from two separate sources. Here, plaintiffs claim that they have, in contrast, two separate remedies drawn from a single source. We conclude that plaintiffs' claim is nonetheless precluded.

In *Association of Owners v. Otte, supra,* the plaintiff sought to enforce a building restriction which was contained both within the recorded condominium declaration and the owners association bylaws. The plaintiff argued that even if the one-year statute of limitations applied to its action to enforce the

building restriction as contained in the recorded condominium declaration, the statute of limitations applicable to actions on contracts should govern its actions to enforce the building restriction as contained in the owners association bylaws.

The *Otte* court found that the nature of the right sued upon, enforcement of a building restriction, was the same whether characterized as a provision of the recorded condominium declaration or as a contract term; therefore, the claim was barred.

██ We find this reasoning persuasive. The nature of the right sued upon here is also the enforcement of the restriction, embodied in the recorded PUD plat, prohibiting the building of improvements within the twenty-foot setback area. In other words, the plaintiffs have a substantive right to a twenty-foot area, free of improvements, on the far side of their property line. That underlying substantive right is the same regardless of whether the plaintiffs seek the removal of the encroaching structure or money damages caused by the encroachment. Depending upon the peculiar circumstances of each encroachment case, equitable relief requiring removal of the improvements, may or may not be appropriate, and if not, damages may be awarded instead. *See Hargreaves v. Skrbina,* 662 P.2d 1078 (Colo. 1983); *Golden Press, Inc. v. Rylands,* 124 Colo. 122, 235 P.2d 592 (1951).

"It is the nature of the right sued upon and not the form of action *or the relief demanded,* which determines the applicability of a particular statute of limitations." *Association of Owners v. Otte, supra,* 38 Colo. App. at 15, 550 P.2d at 896 (emphasis added); *see also Atlee Credit Corp. v. Quetulio,* 22 Ariz.App. 116, 524 P.2d 511 (1974); *Davies v. Krasna,* 14 Cal.3d 502, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975); *but see Jones v. Cox,* 828 P.2d 218 (Colo.1992) (although both property damage and personal injuries are incurred in the same accident, two-year statute of limitations applicable to tort claims governs actions

for property damage while three-year Colorado No Fault Act statute of limitations governs actions for personal injuries).

Because equitable relief and money damages simply represent two different methods of making plaintiffs whole in light of the alleged violation of their substantive right to have the setback restrictions respected, we conclude that § 38–41–119 bars their setback claim.

The judgment is affirmed.

CRISWELL and TAUBMAN, JJ., concur.