SPRINGFIELD *v.* CITY OF LITTLE ROCK.

5-964                                                290 S. W. 2d 620

Opinion delivered May 28, 1956.

*O. W. Pete Wiggins,* for appellant.

*O. D. Longstreth, Jr., Dave E. Witt* and *Joseph Brooks,* for appellee.

J. SEABORN HOLT, Associate Justice. This litigation involves the right of the City of Little Rock to condemn and order the removal (or razing) of 16 dwelling units located on four adjoining city lots, each 50 ft. x 140 ft., and numbered Lots 1, 2, 3, and 4 in Block 194, City of Little Rock, all owned by appellant, M. D. Springfield. The city, following an inspection of the above property, filed complaint in which it alleged that said property had been condemned by Ordinance No. 9814 enacted May 9, 1955, and after describing each of the 16 units further alleged that all had ''been allowed to deteriorate and the condition of said pieces of property and the improvements thereon are such that they are now, and for several months prior hereto have been, a structural hazard, fire hazard, and health hazard; and further that said properties are now, and for some time past have been, a constant menace to the lives and health of the citizens of Little Rock,'' and prayed that appellant be required to raze or remove all of the houses from the property. Appellant answered with a general denial, alleged that the city was exceeding its authority, was acting arbitrarily, and in a cross-complaint prayed for per-

mission to repair the property. On a trial the court, after hearing testimony and viewing the property, sustained the city's complaint that each of these houses was "a menace to the health and safety of the citizens of the community, especially so to those adjoining to these houses" and ordered appellant to remove all the houses located on said property. This appeal followed.

For reversal appellant contends that the court's action was arbitrary, was without authority and an invasion of his constitutional rights. We do not agree.

The preponderance of the evidence shows that on an inspection made March 23, 1955, of Lots 1, 2, 3 and 4 here involved, it was found that six houses were located on Lot 1, with a family occupying each house, eight families shared one toilet, and for each particular dwelling there was no toilet, no bath, no kitchen and no water supply. The heating was unsatisfactory and there was evidence of rat harborage. The exterior and interior of the houses were in a bad state of repair; there was fire damage; the houses were only 4 ft. apart; and there were no screens on the windows. As to Lot 2 there was this testimony: "A. There are four houses on this particular lot and only two families. Q. What about the plumbing? A. It had a toilet and sink in the kitchen. Was in need of major repairs interior and exterior. There was rat harborage. Back yard was littered with rubbish, cans and automobile tires holding water providing mosquitoes breeding." On Lot 3 there were four families and 3 houses, one toilet to two families, no bath, only 4 ft. clearance between houses. As to Lot 4 there were four houses on this lot and three families; eight families were using one toilet. There was no toilet, bath or sink in any of these houses. They were in a bad state of repair and evidence of rat harborage under the houses. In short, it is clearly shown by the evidence that all of these houses were a fire hazard, a health hazard and a structural hazard.

*Section 19-2803 Ark. Stats. 1947* provides: "Removal or razing of buildings.—They shall also have the power to order the removal or razing of, or to remove

or raze any buildings or houses that have become in the opinion of the council dilapidated, unsightly, unsafe, unsanitary, obnoxious or detrimental to the public welfare, and shall provide by ordinance the manner of removing and making such removals." Proceeding under the authority of this section, the City of Little Rock enacted Ordinance No. 9814 which contained the following provisions: "SECTION 1. That M. D. Springfield is the owner of the following described property and that said owner is hereby ordered to remove or raze the buildings upon said property within thirty (30) days from the effective date of this ordinance. SECTION 2. That said property is hereinafter set forth in this section, giving the street address, the legal description thereof, and the hazard which it constitutes to the citizens of Little Rock . . . " Then follows a legal description of each of the 16 dwelling units in which each is declared to be a structural, fire and health hazard. "SECTION 3. That the City Attorney is hereby directed to institute such legal proceedings as may be necessary in order to enforce the provisions of this ordinance, and to remedy the dangerous and unsightly conditions brought about as a result of the failure of the owner to properly keep up said property. SECTION 4. That said legal proceedings shall provide that unless the houses are razed within a certain period, to be allowed by the Court, the City of Little Rock be authorized to raze said property and have a lien upon the real estate for the cost of removing said house. SECTION 5. That all ordinances and parts of ordinances in conflict herewith are hereby repealed and, unless the provisions of this ordinance are put into effect immediately, the public peace, health and safety of the people of Little Rock will be adversely affected; therefore, an emergency is hereby declared to exist, and this ordinance shall be in full force and effect from and after its passage and approval." [this ordinance was introduced and made a part of the record by stipulation of counsel.]

On the record presented we hold that the City has not only acted clearly within its police power, but that it was its duty, in the circumstances, to so act, in the in-

terest of the public health and safety of its inhabitants. "Generally there is a duty upon duly constituted municipal authorities to exercise the police power where there is a public need for it, but it is within their sound discretion to determine both the need and the measure to meet it. Courts will not interfere except for abuse of their discretion, and violation of their duty subjects them only to political consequences and not civil liability," *McQuillin on Municipal Corporations,* Volume 6, page 518, Paragraph 24.33. In the fairly recent case of *Geurin* v. *City of Little Rock,* 203 Ark. 103, 155 S. W. 2d 719, we said: "The police power is as old as the civilized governments which exercise it  .  .  .   Moreover, it has been said that the very existence of government depends on it, as well as the security of the social order, the life and health of the citizen, the enjoyment of private and social life, and the beneficial use of property. One of the most important fields of legislation that may be enacted under the police power is that of regulations in the interest of public health. If a city could not enact laws of this sort to protect the health of its citizens, any kind of disease might be permitted to spread among the inhabitants, resulting in great damage. It would be useless to undertake to review, or even collect the many authorities on this subject; but it is generally held that measures of this nature may be enacted." The general and accepted rule is further announced by *McQuillin in Volume 6,* page 495, paragraph 24.23, where he points out that under its police power a municipal corporation may destroy private property without compensation. "Under certain circumstances and by virtue of the police power a state or municipal corporation may without compensation to the owner destroy private property. This may be done, generally speaking, in these situations: (1) where private property is inherently a public nuisance or injurious to the public welfare, health, safety or morality; (2) where private property, not inherently, but by reason of the manner of its use, which the owner cannot or will not correct, is a public nuisance or injurious to the public welfare, health, safety or morality; and (3) where private property is not a nuisance or injurious to the public in any way but its destruction

466

is necessary to protect the public safety, health, morality or welfare. See *Mugler* v. *Kansas*, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205; *Marysville* v. *Standard Oil Co.*, 27 F (2nd) 478.

"Unsanitary buildings or buildings injurious to the public health may be destroyed if necessary to abate the nuisance and protect the public health and safety. Quoting from Mr. Justice Harlan in *Mugler* v. *Kansas*, 123 U. S. 623." See also *City of Stuttgart* v. *Strait*, 212 Ark. 126, 205 S. W. 2d 35.

Having concluded that the preponderance of the testimony is not against the Chancellor's findings, that these buildings in question were a fire, health and structural hazard and irrepairable, we must and do affirm the decree.