KIRKHAM *v.* CITY OF NORTH LITTLE ROCK.

4872                                                301 S. W. 2d 559

Opinion delivered May 6, 1957.

J. *Harrod Berry,* for appellant.

*Reed W. Thompson* and *C. Byron Smith, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant was convicted of violating Section 3 of North Little Rock city ordinance No. 490, approved April 8, 1918, which provides as follows:

"It shall be unlawful for any person or persons to keep, store, pile, erect, maintain or permit upon any premises owned, occupied by, or under the control of him or them, or upon any street, alley, or sidewalk adjacent thereto, any inflammable or combustible material such as hay, straw, shavings, rags, wool, packing cases, packing materials, inflammable waste materials, lumber or other substance in such a manner as to endanger from fire any building or structure within the city limits."

Under this language of the ordinance, appellant was charged with "creating a fire hazard on May 21, 1956." After conviction, in a trial before the court only, a new trial was granted, and the cause set for jury trial. On hearing the evidence, the jury returned a verdict of guilty, and appellant was fined $25, from which he appeals. Appellant's principal argument for reversal is that the city ordinance, and more particularly Section 3, is unconstitutional and void: (1) For vagueness and uncertainty; (2) For being, as a penal law, too indefinite; (3) For being an improper delegation of authority to the City Fire Department; (4) As an unreasonable restraint on a proper, legitimate business operation.

The Section (quoted above) provides that it is "unlawful * * * to keep, store, pile, erect, maintain or permit upon any premises owned, occupied by, * * * an inflammable or combustible material such as * * *

lumber or other substance in such a manner as to endanger from fire any building or structure within the city limits." It is true that the ordinance does not "spell out" specific acts that would violate the phrase *"in such a manner,"* and appellant accordingly contends that the ordinance is vague and uncertain. We do not concur with this argument. Actually, in dealing with this particular subject (fire hazards) it would be extremely difficult to specify each act that would constitute a hazard. This is true because many conditions and circumstances must be considered in determining whether particular premises create a hazard . . . the location or neighborhood of the business, the age and type of the material, the method of maintenance, etc. The same material which might well constitute a fire hazard in one location might well be permissible in another location. The same lumber, neatly stacked, might well prove hazardous if carelessly piled or thrown upon a heap. As every camper and outdoorsman knows, wood will burn more easily and quickly when loosely arranged, because of the circulation of oxygen.

Cases cited by appellant in support of his contention do not apply here. *State* v. *Bryant,* 219 Ark. 313, 241 S. W. 2d 473, dealt with what constituted a "small farm vehicle." *Green* v. *Blanchard,* 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 84, dealt with construction of an act regulating the practice of dentistry. Both of those cases involved statutes, the provisions of which, average men might well disagree upon. We do not think that true in the instant cause. The Supreme Court of Michigan, in the case of *People* v. *Sarnoff,* 302 Mich. 266, 4 N. W. 2d 544, 140 A. L. R. 1206, said:

"Sarnoff contends that Section 2969 of the Ordinance No. 131-D amending Ordinance No. 354-C of the City of Detroit, known as the Building Code, is unconstitutional, because the provision requiring a dwelling and the parts thereof to 'be kept in good repair by the owner' is too broad and indefinite and therefore, fails adequately to inform the owner of the particular act or acts prohibited. * * *"

". "However, the words 'good repair' have a well known and definite meaning. \* \* \* They sufficiently inform the ordinary owner that his property must be fit for the habitation of those who would ordinarily use his dwelling. *It would be difficult, if not impossible, to lay down a rule of conduct in more exact terms which would at the same time cover the varying conditions presented in each individual case.* \* \* \*" (Emphasis supplied)

The Supreme Court of Tennessee, in the case of *Mayor and Aldermen of Town of Jonesboro* v. *Kincheloe,* 148 Tenn. 688, 257 S. W. 418, in a very lengthy opinion, aptly discussed a similar situation. There, the Court was considering a municipal ordinance, which, in part, provided' as follows:

"That it shall be unlawful for any person, firm or corporation to keep, or allow to be kept on his, their or its premises, within the corporate limits of said town, calves overnight, for the purpose of sale or shipment, in such way or manner as that they will disturb the residents thereof by their noises."

We quote in part from the decision.

"The municipal codes of all of our cities contain numerous illustrations of ordinances enacted for the purpose of preserving public peace, which necessarily leave to the enforcing officials a very large discretion, such as those making it an offense to disturb public worship, or schools, to use abusive or insulting language in public, and broadly, to conduct oneself in a 'disorderly' manner in any public place to the annoyance of others. Such ordinances are all subject in a sense to the general charge of indefiniteness, but their validity is not questioned on this account. What constitutes disorderly conduct is always a question of fact under the particular circumstances. The particular ordinance under discussion is directed at the offense of bringing the animals described into the corporate limits and keeping them overnight in such a manner as that they disturb the peace and quiet of the community. If they can be brought

in and kept in such condition, and under such supervision and control, as that they do not disturb the community by their noises, no offense arises under the ordinance. No disorder has resulted and the ordinance has not been violated. This question of fact would be the one to be determined in every case presented. * * *

"The court will determine whether or not the calves have been kept in such a way as to 'disturb' the residents of the town, just as whether or not any person had conducted himself in such a way as to 'disturb' an assemblage.

"Again, by § 2857, Shannon's Code, it is made an offense to 'overdrive, overload' etc., any animal, and it is left to the discretion of the authorities to determine whether or not, on the facts of the given case, the offense has been committed. With respect to all such laws there is some degree of indefiniteness in defining the offense, but these laws are nevertheless valid and enforceable.

"Both statutes and ordinances are in force in some of the states and cities of the country regulating the speed of automobiles without fixing a limit of certain miles per hour, but providing in general terms that the driver shall not move at such a speed as under the conditions will endanger life, and the test of violation is one of fact as to whether or not the defendant was driving recklessly. * * *

"The necessity for definiteness is founded upon the principle that one may not be lawfully punished for a violation of a statute or ordinance which does not by its terms give notice of the nature of the offense. It must be 'certain and definite, so that the average man may with due care after reading the same, understand whether he will incur a penalty for his actions or not.' Otherwise it is void for uncertainty. 19 R. C. L. 810.

"The ordinance before us is sufficiently certain in the definition of the offense, and also with regard to the penalty. Any average man reading it will readily understand that he commits an offense under this ordinance

whenever he keeps, or allows to be kept, at night, on his premises within the corporate limits, calves for the purpose of sale or shipment, without so handling or controlling them as to keep them from disturbing the residents of the community by the noises which calves thus kept, in places strange to them and removed from their accustomed surroundings, as wont to make.   *   *   *'' We consider the ordinance to be sufficiently clear as to apprise an individual of acts that would be prohibited under the Section.

It is also contended that the ordinance gives an improper delegation of authority to the city fire department. Ark. Stats. § 19-2401 which act was passed in 1875, provides: ''Municipal corporations shall have the power to make and publish, from time to time, bylaws or ordinances, not inconsistent with the laws of the State, for carrying into effect or discharging the powers or duties conferred by the provisions of this act, and it is hereby made the duty of the municipal corporation to publish such bylaws and ordinances as shall be necessary to secure such corporations and their inhabitants against injuries by fire,   *   *   *   and they shall have power to make and publish bylaws and ordinances, not inconsistent with the laws of this State, as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof.'' Thus, there was clear legislative authority for the enactment of the ordinance. Subsequent legislative acts gave authority to the State Insurance Commissioner and State Fire Marshal to enforce all laws in the state regarding the prevention of fires.[1] Section 8 of Act 115 of 1927 provided that chiefs and assistant chiefs of all fire departments, along with certain other officials, should be assistants to the Commissioner and State Fire Marshal, and Section 9 authorized any such assistants to enter any building or premises within their jurisdiction for purposes of inspection. The

[1] The 1925 legislature abolished the office of State Insurance Commissioner and State Fire Marshal, and the duties were then placed upon the Commissioner of Insurance and Revenues. Act 115 of 1927 recreated the office of Insurance Commissioner and State Fire Marshal.

law was subsequently changed by Act 254 of 1955, known as the "Fire Prevention Act." This act empowers the Director of the Arkansas State Police to create and maintain a division of fire prevention in said department, and Section 4 provides that "All mayors, members of fire departments, and peace officers shall be ex-officio deputies to the Director. * * *" Section 5 requires the Director "* * * and his officers and deputies to enforce all laws and ordinances with regard to the following: (1) The prevention of fires; * * *" Section 7 gives the authority to the Director or deputies to "* * * inspect all buildings and premises within their jurisdiction, and issue orders for the compliance with such regulations. * * *" It is obvious that the authority to determine what conditions constitute a fire hazard would have to be placed in some designated official, and we know of none better qualified than an official of the fire department,[2] for certainly this is in conjunction with his ordinary duties. *Smith* v. *Twin State Gas and Electric Co.,* 83 N. H. 439, 144 A. 57, 783, 61 A. L. R. 1015. It should be pointed out that a finding by such an official that a hazard does exist, is not conclusive. The one charged is not "automatically guilty" because of such determination. He still has the right of trial and may offer his evidence, including that of expert witnesses, that the condition complained of does not create a fire hazard. It then becomes a matter for the jury, as it properly should.

Appellant argues that the ordinance is an unreasonable restraint on a legitimate business. We do not agree. Under the police power, the municipal corporation has full authority to protect the health, safety and general welfare of the citizenry. *Geurin* v. *City of Little Rock,* 203 Ark. 103, 155 S. W. 2d 719. *Springfield* v.

---

[2] Section 1, ordinance No. 490, designates the Chief of the Fire Department as Fire Warden of the City, and empowers him to require owners or occupants of premises which he considers unsafe to correct such conditions so as not to be dangerous in promoting or causing fires. Section 2 empowers the Chief or any member of the Fire Department appointed by him to "enter any * * * place for the purpose of inspecting the same or in the performance of any duty pertaining to the Fire Department."

*City of Little Rock,* 226 Ark. 462, 290 S. W. 2d 620. We conclude that the ordinance is valid.

It is also contended the court erred in refusing to instruct the jury that before they could find appellant guilty, they must first find that his "acts or omissions, if any, were willful." Webster's New International Dictionary, Second Edition, in defining the word "willful", includes "intentional." In Vol. 45, Words and Phrases, page 198, it is said, "In Statutory offense, created under police power, unless wrongful intent or guilty knowledge, commonly designated by words 'willfully' or 'maliciously', is made essential element of prohibited act, intent to disobey law is immaterial." The ordinance herein involved does not include the word "willful." From 14 Am. Jur., § 24, 784: "* * * A criminal intent is not a necessary element of offenses which are merely *malum prohibitum* or of prohibitive statutes which cover misdemeanors in aid of the police power where no provision is made as to intention. * * *" As stated by the Supreme Judicial Court of Massachusetts in *Commonwealth* v. *Closson,* 229 Mass. 329, 118 N. E. 653, "* * * It is immaterial that he was not actuated by any criminal intent. In prosecutions for misdemeanors created by statutes under the police powers, proof of a guilty mind or corrupt purpose is not essential to a conviction. * * * The use of the streets by travelers of every description is not prohibited. It is only the mode of operation by drivers of vehicles which is regulated * * * and their violation is punishable as a criminal offense. * * *" Likewise, in *City of Hays* v. *Schueler,* 107 Kans. 635, 193 Pac. 311, the Supreme Court of Kansas passed upon the validity of a city ordinance requiring a red rear light to be displayed between certain hours. The defendant contended that the ordinance was invalid because willfulness or wrongful intent was not made an element of the offense, and that a light might go out without willfulness or intentional fault, and in spite of the utmost care. Relative to this argument, the Court said: "* * * If it were necessary to validity of an ordinance that conditions of the character indicated in the

motion to quash should be inserted, the full protection which the regulation is designed to afford could not be secured, and evasion would be so easy the regulation would practically, if not utterly, fail. The regulation falls, therefore, within the numerous class in which diligence, actual knowledge, and bad motives are immaterial, and the fact of noncompliance entails penalty. * * *,,

It is next argued that the evidence was insufficient to support the verdict. Captain John Finn of the North Little Rock fire department testified he talked with appellant on March 8, 1956, and again on May 9, 1956, advising that the condition of his (appellant's) premises constituted a fire hazard, and directing that same be "cleaned up." He described to the jury the conditions that existed, and testified that the hazard still existed at the time of obtaining the warrant. Captain Earl Eller testified that a fire hazard existed, and explained the conditions. Certain photographs were introduced which very clearly showed a condition that needed correction. We conclude the evidence was sufficient to justify the jury in reaching their verdict.

Appellant contends that the photographs (heretofore mentioned) were improperly admitted because (1) they did not correctly reflect what was purported to be shown, and (2) the photographs were taken on May 9, 1956, while the offense was charged to have been committed on May 21, 1956. In regard to the first contention, it was clearly explained to the jury by the photographer that the camera could not record depth; that in certain instances there would be space between lumber and the fence (subject matter of some pictures) not shown by the photograph because of the flatness of the pictures. These facts were made clear to the jury through cross-examination by appellant's counsel, and he was not prejudiced thereby. It is immaterial that the pictures were taken on May 9th, though the offense was charged as of May 21st. The rule announced in the cases of *Medlock* v. *State,* 18 Ark. 363, and *Scoggins* v. *State,* 32 Ark. 205, to the effect that the day on which the offense, as charged, is alleged to have been committed, is not, in

general, material, has been many times reiterated by this Court. It is sufficient if the actual offense was committed prior to the finding of the indictment and on any day within the statute of limitations.[3]

It is contended that the court erred in permitting Captains Finn and Eller to testify regarding the condition of appellant's premises in earlier years, and that they had talked with him relative to same. We consider this evidence admissible to show that appellant was familiar with the nature of conditions considered a fire hazard, and which would subject him to a charge of violation of the ordinance; nor was he prejudiced, since the court instructed the jury, at the request of the appellant, as follows:

"The jury is instructed that this case arose out of a warrant obtained by Captain John Finn of the North Little Rock Fire Department, the prosecuting witness, on May 21, 1956. You are further instructed that the date of the obtaining of the warrant fixes the date on which the defendant is charged with having committed the alleged offense, and that in determining whether or not Mr. Kirkham has violated the law you must therefore consider the circumstances as they were on said date, May 21, 1956."

While this instruction was erroneous, as heretofore mentioned, it was given at the request of appellant, was to his advantage, and he could have been helped by it. Certainly, his rights were not prejudiced.

Finding no reversible error, the cause is affirmed.

---

[3] Exceptions to the rule include instances where a special day is essential, or where time is the essence of the offense.