The Honorable James G. Dietz State Representative 4221 Richards North Little Rock, AR 72117
Dear Representative Dietz:
This is in response to your request for an opinion on the following questions:
 1. If a city of first class properly condemns and removes a building or house pursuant to A.C.A. §§ 14-56-203 and 14-54-904(b), does the city have any additional avenues to file and enforce a lien on the property to recoup its costs besides the two avenues granted under A.C.A. 14-54-904(a)?
 2. If a city of first class properly condemns and removes a building or house pursuant to A.C.A. §§ 14-56-203 and 14-54-904(b) and files a lien with the county clerk for its costs, is the city barred from ever enforcing the lien if the city fails to take action in Chancery Court within eighteen months required under A.C.A. § 14-54-904(a)(1)?
 3. If a city of first class properly condemns and removes a building or house pursuant to A.C.A. §§ 14-56-203 and 14-54-904(b) and properly certifies its costs to the county tax collector for collection under A.C.A. 14-54-904(a)(2), does the city have the authority to repeal its certification and allow the tax collector to remove the costs from the property's taxes?
It is my opinion, in response to your first question, that the lien granted under A.C.A. § 14-54-904(b)(1) (1987) must be enforced and collected pursuant to A.C.A. § 14-54-904(a) (1987). Thus, in my opinion, the answer to your first question is "no."
This conclusion follows from the plain language of § 14-54-904, and from the constitutional principle that "[n]o municipal corporation shall be authorized to pass any law contrary to the general laws of the state[.]" Ark. Const. art. 12, § 4. Subsection (b) of § 14-54-904 states as follows:
 (1) In any situation in which a city of the first or second class issues an order for the removal or razing of a building or house under the provisions of § 14-56-203, and such order is not complied with by the owner of the building or house and the city then removes or razes the building or house, a lien is granted and given against the real property for the cost of the removal or razing.
 (2) The lien granted by this subsection shall also be enforced pursuant to the lien enforcement procedures set forth in subsection (a) of this section.
Subsection (a) of § 14-54-904 states:
 (a) The lien provided for in § 14-54-903 may be enforced and collected in either one of the following manners:
 (1) At any time within eighteen (18) months after work has been done, by an action in the chancery court; or
 (2) The amount of the lien provided in § 14-54-903 may be determined at a hearing before the governing body of the municipality held after thirty (30) days' written notice by certified mail to the owner of the property if the name and whereabouts of the owner are known. If the name of the owner cannot be determined, then the amount will be determined only after publication of notice of the hearing in a newspaper having a bona fide circulation in the county where the property is located for one (1) insertion per week for four (4) consecutive weeks. The determination of the governing body is subject to appeal by the property owner in the chancery court. The amount so determined at the hearing, plus ten percent (10%) penalty for collection, shall be certified by the governing body of the municipality to the tax collector of the county where the municipality is located, and placed by him on the tax books as delinquent taxes, and collected accordingly. The amount, less three percent (3%) thereof, when so collected shall be paid to the municipality by the county tax collector.
It is thus clear that the enforcement procedure in § 14-54-904 pertaining to unsanitary conditions on real property also applies in the case of orders issued under A.C.A. § 14-56-203 (1987) for the removal or razing of a building.[1] It appears, further, that the two avenues provided under § 14-54-904 are the exclusive means of enforcing the lien. Although the word "may" in a statute is ordinarily viewed as directory or permissive rather than mandatory (Gregory v. Colvin, 235 Ark. 1007,363 S.W.2d 539 (1963)), it must be recognized in this instance that the discretion granted by the use of the word "may" in § 14-54-904(a) relates to the two "manners" of enforcing the lien. That is, the city may choose "either one of the following [two] manners" in its efforts to enforce and collect the lien. The city is not authorized, however, in my opinion, to pursue other avenues of enforcement. Rather, the plain language of §14-54-904(b)(2) indicates that the lien enforcement procedures set forth in § 14-54-904(a) must be followed; and as noted above, the permission or discretion implied by the use of the word "may" in subsection (a) only extends to the enforcement methods outlined therein.
It should perhaps also be noted, in responding to your first question, that I have considered the possibility of relying upon the city's general police power (see A.C.A. §§ 14-55-102 and 14-54-103(1), and generallyGeurin v. City of Little Rock, 203 Ark. 103, 155 S.W.2d 719 (1941) andCity of Little Rock v. Smith, 204 Ark. 692, 163 S.W.2d 705 (1942)) in support of the city's pursuit of additional avenues to enforce such a lien. In Springfield v. City of Little Rock, 226 Ark. 462, 290 S.W.2d 620
(1956), the court cited A.C.A. § 14-56-203, supra, and the police power, in upholding the city's authority to enforce an ordinance for the removal or razing of particular buildings and giving the city a lien for its related costs. Presumably, the city could pursue any available means in enforcing its lien.
This case was decided, however, prior to the amendment of A.C.A. §14-54-904, supra, specifying the lien enforcement procedures. See Acts 1983, No. 80, § 1. The state has now expressly granted a lien against the real property for the cost of the removal or razing. A.C.A. §14-54-904(b)(1), supra. And it has specified the enforcement and collection mechanism. Id. at subsection (b)(2). My research indicates that the city's general police power cannot be used in this instance to enlarge the special grant of power set out in § 14-54-904(b). See, e.g.,City of Stuttgart v. Strait, 212 Ark. 126, 205 S.W.2d 35 (1947) (regarding express legislative grants of power in relation to building regulations). Matters coming within the police power of the state are specifically excluded from "municipal affairs" under A.C.A. §14-43-601(a)(1) (1987). Such matters are, instead, "state affairs and subject to the general laws of the [state]. . . ." Id. The city would, in my opinion, be acting contrary to state law in seeking to enforce and collect the lien granted under § 14-54-904(b) in some manner other than those specified in § 14-54-904(a). This would also be challengable under article 12, § 4 of the Constitution, supra.
It is my opinion that the answer to your second question, involving the eighteen-month period for a chancery court action, is in all likelihood "yes," assuming that the city does not proceed under § 14-54-904(a)(2) to collect the lien amount as delinquent taxes. The city will, in my opinion, likely be barred from enforcing the lien if it does not proceed under either of the two procedures set forth in § 14-54-904(a).
The answer to your last question concerning repeal of the certification of the lien amount is, in my opinion, "no." Once certified to the tax collector, the amount of the lien and penalty "shall be . . . placed by [the collector] on the tax books as delinquent taxes, and collectedaccordingly." A.C.A. § 14-54-904(a)(2) (emphasis added). As noted in Attorney General Opinion 90-300 (copy enclosed), therefore, the lien amount is to be treated exactly as delinquent taxes would be treated.Id. at 2. It was thus concluded in Opinion 90-300 that, as with delinquent taxes, the lien amount must be paid before current taxes and the collector cannot collect the ad valorem taxes without collecting the lien. Id.
Similarly, because there is no general authority for forgiving taxes that are owing (see Op. Att'y Gen. 94-022), I must conclude that the legislature intended to require collection of the certified lien amount and did not intend to permit removal of these "delinquent taxes" from the tax books.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] Section 14-56-203 states as follows:
 Cities of the first and second class shall have the power to order the removal or razing of, or to remove or raze, any buildings or houses that in the opinion of the council have become dilapidated, unsightly, unsafe, unsanitary, obnoxious, or detrimental to the public welfare and shall provide, by ordinance, the manner of removing and making these removals.