The Honorable Boyd Hickinbotham State Representative P.O. Box 326 Salem, AR 72576-0326
Dear Representative Hickinbotham:
I am writing in response to your request for my opinion on the following questions:
 1. What is the liability of the city if a resident/visitor is injured in burned-out homes located within the city limits?
 2. Is the State of Arkansas responsible to clean these properties, which have reverted back to the state, or financially reimburse the city if the city will supervise the clean-up?
RESPONSE
With respect to your first question, I believe a city owes a resident/visitor a duty to abate nuisances of the sort at issue. However, the city will be liable for the breach of that duty only to the extent of its liability coverage. With respect to your second question, I believe that to the extent that the "reversion" vests ownership of the property in the state — a somewhat problematic issue I will discuss below — the state is responsible for abating the nuisance. I also believe the city will have a claim against the state for any costs the city incurs in cleaning up.
Question 1: What is the liability of the city if a resident/visitor isinjured in burned-out homes located within the city limits?
Cities are authorized by statute to arrange for the removal of dilapidated structures:
 Cities of the first and second class shall have the power to order the removal or razing of, or to remove or raze, any buildings or houses that in the opinion of the council have become dilapidated, unsightly, unsafe, unsanitary, obnoxious, or detrimental to the public welfare and shall provide, by ordinance, the manner of removing and making these removals.
A.C.A. § 14-56-203. Similarly, A.C.A. § 14-54-901 provides:
 Incorporated towns and cities of the first and second class are empowered to order the owner of lots and other real property within their towns or cities to cut weeds; to remove garbage, rubbish, and other unsightly and unsanitary articles and things upon the property; and to eliminate, fill up, or remove stagnant pools of water or any other unsanitary thing, place, or condition which might become a breeding place for mosquitoes, flies, and germs harmful to the health of the community, after the town or city has provided therefor by an ordinance to that effect.
In Springfield v. City of Little Rock, 226 Ark. 462, 464, 290 S.W.2d 620
(1956), which involved a challenge to the city's razing of various buildings, the Arkansas Supreme Court made clear that a city has not only the power but the duty to abate such nuisances:
 On the record presented we hold that the City has not only acted clearly within its police power, but that it was its duty, in the circumstances, to so act, in the interest of the public health and safety of its inhabitants." Generally there is a duty upon duly constituted municipal authorities to exercise the police power where there is a public need for it, but it is within their sound discretion to determine both the need and the measure to meet it.[1] Courts will not interfere except for abuse of their discretion, and violation of their duty subjects them only to political consequences and not civil liability," McQuillin on Municipal Corporations, Volume 6, page 518, Paragraph 24.33.
The complete immunity from suit referenced in the last sentence of this passage was somewhat qualified by Act 292 of 1993, which amended A.C.A. §21-9-301 to read as follows:
 It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
(Emphasis added.) In accordance with this statute, I believe the city would be liable to the extent of its liability coverage.
However, I do not believe a city can be held strictly liable for any and all unabated nuisances on private property. The foregoing establishes only that a city must make reasonable efforts to ensure the safety of its residents. It does not follow that the city must immediately remedy any and all hazards regardless of whether city officials are even aware of the danger. Rather, in my opinion, upon discovering a problem, the city must expeditiously demand that the owner of the property provide a remedy and, if the owner fails to comply, expeditiously do so itself. Whether the city has complied with this standard — and, for that matter, whether the problem amounts to a nuisance — can only be resolved by a finder of fact.
Question 2: Is the State of Arkansas responsible to clean theseproperties, which have reverted back to the state, or financiallyreimburse the city if the city will supervise the clean-up?
I should note initially what I consider an ambiguity in your representation that the property has "reverted back to the state." I assume the referenced "reversion" was prompted by a failure to pay property taxes. The law regarding forfeiture of property for failure to pay property taxes is set forth in chapter 37 of title 26 of the Arkansas Code. Section 26-37-101 of the Code, captioned "Transfer of tax-delinquent lands," provides:
 (a)(1) All lands upon which the taxes have not been paid for one (1) year following the date the taxes were due, October 10, shall be forfeited to the State of Arkansas and transmitted by certification to the Commissioner of State Lands for collection or sale.
(2) No tax-delinquent lands shall be sold at the county level.
 (b) The county collector shall hold all tax-delinquent lands in the county for one (1) year after the date of delinquency, and, if the lands are not redeemed by the certification date, which shall be no later than July 1 of the following year, the collector shall transmit it to the state by certification, after notice as provided in this chapter, indicating all taxes, penalties, interest, and costs due and the name and last known address of the owner of record of the tax-delinquent lands.
 (c) Upon receipt of the certification, title to the tax-delinquent lands shall vest in the State of Arkansas in care of the Commissioner of State Lands.
With respect to the issue of ownership — and, by extension, the issue of ultimate responsibility to abate nuisances — I am uncertain what it means to say "[t]he county collector shall hold all tax-delinquent lands" for a year after the date of the delinquency. I assume this condition in itself does not amount to a "reversion" either to the county or the state, since the statute expressly states that the forfeiture will not occur until a year after the delinquency, whereupon the property will be "transmitted by certification to the Commissioner of State Lands" and title "shall vest in the State of Arkansas," subject only to the right of redemption acknowledged at A.C.A. § 26-37-302(a)(1). In my opinion, then, the delinquent taxpayer continues to own the property during this period and should be charged with the responsibility in the first instance to abate nuisances.
The issue is not quite so clear once ownership of the property vests in the state. The state's ownership of such property is unique in that it is often not possessory and it remains defeasible by the former owner's payment of any delinquencies. See A.C.A. § 26-37-301 et seq. The state is further precluded by statute from selling the property within two years of the time it obtains title. A.C.A. § 26-37-301(b). A former owner retains the power to redeem the property beyond this two-year period so long as the state still owns it. A.C.A. § 26-37-311. Nevertheless, notwithstanding the qualifications that apply to the state's ownership of such property, it remains the owner of record and, as such, in my estimation should be subject to the same municipal police-power regulation as private citizens.
My inquiries suggest that the state is regularly apprised by municipalities of perceived nuisances on "reverted" state property. The state's general policy in these instances is to leave the abatement to the municipality, triggering the application of various statutes. Subsection 14-54-904(b)(1) of the Code grants a lien on the real property to cover costs and expenses if a city elects to raze a structure pursuant to A.C.A. § 14-56-203. Similarly, A.C.A. § 14-54-903 authorizes a city to correct any nuisance giving rise to a demand under A.C.A. § 14-54-901. Subsection 14-54-903(b) of the Code gives the city a lien against the property to cover costs. Section 14-54-904 provides that the lien may be enforced either by an action in chancery court or in a hearing before the municipality's governing body with a right of appeal to chancery court. I am informed that the state as a matter of practice waives its sovereign immunity when named as an owner/defendant in such actions. If the city chooses to proceed before its governing board, the amount determined at the hearing is certified to the county tax collector for collection as delinquent taxes. A.C.A. § 14-54-904(a)(2). Once collected, this tax enhancement is returned to the city as reimbursement.
Significantly, the statutes discussed in the previous paragraph apply only to abatements undertaken by the city. I am unaware of any corresponding provision that would entitle the state to recover amounts it expended to abate nuisances during its period of ownership of property — a fact that may account for the state's failure to act on municipalities' complaints of nuisances on state land. Section 26-37-205
of the Code, which sets forth how the proceeds of a tax-delinquency sale should be distributed, provides in pertinent part:
 (a) All moneys collected by the Commissioner of State Lands from the sale or redemption of tax delinquent lands shall be distributed as follows:
 (1) First, to the Commissioner of State Lands, the penalties, the collection fees, sale costs, and other costs as prescribed by law. . . .
Given the apparent absence of law authorizing the state to recover its costs of abating nuisances, it would appear that such expenses do not qualify as "other costs as prescribed by law." However, I should note that if the original owner redeems the property, the state will be entitled to compensation for any improvements it made to the property at any time more than two years after it obtained title. A.C.A. §26-37-209.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] In Phillips v. Town of Oak Grove, 33 Ark. 183, 189, 968 S.W.2d 600
(1998), the Supreme Court offered the following remarks on the police power:
 In Springfield v. City of Little Rock, 226 Ark. 462, 290 S.W.2d 620
(1956), we recognized the city's plenary duty to exercise its police power in the interest of the public health and safety of its inhabitants. Id. at 464-65, 290 S.W.2d at 622. The police power of the state is founded in public necessity and this necessity must exist in order to justify its exercise. Id. It is always justified when it can be said to be in the interest of the public health, public safety, public comfort, and when it is, private rights must yield to public security, under reasonable laws. City of Little Rock v. Smith, 204 Ark. 692, 695, 163 S.W.2d 705, 707 (1942) (quoting Beaty v. Humphrey, 195 Ark. 1008, 115 S.W.2d 559 (1938)). The State has authorized the municipalities to legislate under the police power in Ark. Code Ann. § 14-55-102 (1987). That section provides, "Municipal corporations shall have the power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof."