The Honorable Jerry Taylor State Senator 6203 Ridgewood Dr. Pine Bluff, AR 71603-7738
Dear Senator Taylor:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 Does the City of Pine Bluff have the authority to direct business owners, upon the risk of criminal liability, to prohibit smoking in their businesses and within a 10-foot radius of the entrances to the businesses?
You have attached to your request a proposed ordinance and amendments thereto that would ban smoking in various Pine Bluff establishments. I am informed that subsequent to the submission of your request, the City of Pine Bluff in fact enacted as Ordinance No. 5142 the materials you have provided me, including the proposed amendments. In the ensuing discussion, I will refer to the provisions of the ordinance by their designations as amended.
Section 3 of the ordinance bans smoking "in all public places, places of employment, and in all city buildings and city vehicles, other than the exemptions noted in Section 4." The referenced Section 4 exempts bars, retail tobacco stores and separately ventilated smoking areas in businesses. Subsection 2(g)(3) extends the ban to a ten-foot radius measured from the center of any entrance. Subsection 5(a) charges the manager of an establishment in which smoking is prohibited to place no-smoking signs "at the major entrance and other appropriate areas." Subsection 5(b) provides that "[t]he manager of a public place in which smoking is prohibited or restricted shall not knowingly permit or fail to make reasonable efforts to prevent smoking in any area where smoking is prohibited." Subsection 7(a) declares it "unlawful for a manager to knowingly permit or fail to make reasonable efforts to prevent smoking by the establishment's customers or employees where prohibited by this Ordinance, or to fail to ensure that the public entrances and other appropriate areas in the establishment bear the required signage." This subsection further classifies a violation of this mandate as a misdemeanor. Subsection 7(d) provides that multiple violations of the ordinance might result in the suspension or revocation of any permit or license issued to the establishment in which the violations occurred. Subsection 6(b) provides that the police and fire departments will enforce the ordinance.
One of your constituents has lodged the following objections to the ordinance:
 1. I am a small business person and my restaurant would be affected by this ordinance as presently proposed. Based on my research into statistics from other locations that have enacted this similar [sic] ordinance, I expect an impact on my business in the neighborhood of 10% of my gross and perhaps more in our specific locality.
 2. I have specific concerns with the way this ordinance is written because I believe it to be unenforceable without compelling me and my employees and others similarly situation [sic] into being law enforcement officers for the City of Pine Bluff. Please note that the enforcement section requires managers to police their customers and employees not just inside their establishment, but even outside that establishment. Please note that I could be fined because someone pulls into my parking lot smoking a cigarette, gets out and walks to my front door even though I have little or no control nor opportunity to influence their conduct. Please also note that I could be subject to losing my license to do business. I am very concerned that as a manager I will have to take time out from my duties in the restaurant to be ever vigilant of who is standing around my front door smoking.
 3. I am very concerned with the possibility for the unequal enforcement of this law. It appears from the way it is written it will affect those of us who have and rely on a business locations [sic] in highly visible areas and will have less impact on others leading to a discriminatory enforcement of this law.
 4. All of the above reasons I believe are sufficient. However, I am also strongly concerned about the City taking my property and by interfering with my business without a sufficient nexus to the public health or any other reasonable governmental purpose. This ordinance as proposed is overly broad and will not result in the least restrictive means of achieving any legitimate purpose because it is an outright ban and affects my rights to my uses of my private property and I believe violates the due process provisions and rights that I am accorded as a citizen.
RESPONSE
In my opinion, the ordinance likely would withstand a legal challenge under the provisions of existing Arkansas law and Arkansas Supreme Court decisions.
At issue initially is whether a municipality has any authority to regulate smoking. As the Arkansas Supreme Court noted in Phillips v. Townof Oak Grove, 333 Ark. 183, 189-90, 968 S.W.2d 600 (1998):
 Municipal corporations derive their legislative powers from the general laws of the state. Ark. Const. art. 12, § 4. A municipality has no powers except those expressly conferred by the legislature, and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared. City of Lowell v. M N Mobile Home Park, Inc., 323 Ark. 332, 336, 916 S.W.2d 95, 97 (1996).
 In Springfield v. City of Little Rock, 226 Ark. 462, 290 S.W.2d 620
(1956), we recognized the city's plenary duty to exercise its police power in the interest of the public health and safety of its inhabitants. Id. at 464-65, 290 S.W.2d at 622. The police power of the state is founded in public necessity and this necessity must exist in order to justify its exercise. Id. It is always justified when it can be said to be in the interest of the public health, public safety, public comfort, and when it is, private rights must yield to public security, under reasonable laws. City of Little Rock v. Smith, 204 Ark. 692, 695, 163 S.W.2d 705, 707 (1942) (quoting Beaty v. Humphrey, 195 Ark. 1008, 115 S.W.2d 559 (1938). The State has authorized the municipalities to legislate under the police power in Ark. Code Ann. § 14-55-102 (1987). That section provides, "Municipal corporations shall have the power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof."
 Under its grant of power, cities and incorporated towns can "[p]revent injury or annoyance within the limits of the municipal corporation from anything dangerous, offensive, or unhealthy and cause any nuisance to be abated within the jurisdiction given the board of health in § 14-262-102[.] Ark. Code Ann. § 14-54-103 (1987)."
* * *
 [J]udicial review of a legislative enactment is limited to determining whether the legislation is arbitrary, capricious, and unreasonable. . . . The legislation is not arbitrary if there is any reasonable basis for its enactment.
Considered in isolation, these principles would appear to support a local government's regulation of smoking. However, the question remains whether the state may have regulated smoking to an extent that would preempt any local legislation on this question. As I stated in Ark. Op. Att'y Gen. No. 2005-018, a local government "may not exercise local legislative power in any manner inconsistent with state law. Kollmeyer v. Greer,267 Ark. 632, 593 S.W.2d 29 (1980)." As I further observed:
 The State may preempt any local legislative authority by regulating an area completely so as not to leave reasonable room for local regulation. Id. The Court also noted that the "General Assembly should be clear when it intends to pre-empt a field that otherwise could be validly regulated by county ordinance[.]" Id. at 637.
The state has enacted various laws regulating smoking. See, e.g., A.C.A. §§ 6-21-609 (prohibiting smoking on school district property); 12-6-401
(restricting smoking in various police patrol cars); 20-22-710
(regulating smoking around and within fireworks stands); 20-27-701
through -703 (regulating smoking in various health care establishments);20-78-217 (restricting smoking in day-care centers); 22-3-220
(prohibiting smoking in the Capitol building); and 25-1-102 (authorizing state agency heads to promulgate smoking policies). Act 134 of 2005, which takes effect on October 1, 2005, further adds to the Code A.C.A. §§20-27-704 through -708, banning smoking in medical facilities and on their grounds.
In my opinion, these statutes have an ad hoc character and do not evidence a legislative intention completely to preempt local laws with respect to smoking so long as those local laws do not contradict any existing state law. In the attached Ark. Op. Att'y Gen. No. 95-302, one of my predecessors offered the following analysis of the preemption issue with respect to such antismoking legislation:
 The initial question arises whether the legislature intended to preempt municipal legislation in this field. Sections 20-27-701 through -703 admittedly manifest a statewide concern in the matter of public smoking. See generally City of Ft. Smith v. Ft. Smith Housing Auth., 256 Ark. 254, 258-259, 506 S.W.2d 534 (1974) (holding that the Housing Authority "clearly manifests a statewide rather than a municipal concern" and that a Housing Authority is not a municipal affair). The legislature has declared a public policy in the matter of protecting the rights of nonsmokers ( § 20-27-701), and has then set forth regulations with respect to certain locations. ( §§ 20-27-702 and -703). See also A.C.A. § 20-78-217 (Repl. 1991) (banning smoking in state-licensed day care centers). The statement in § 20-27-701(b), supra, that the rights of nonsmokers shall be protected "in the manner provided in this subchapter" might be cited for the proposition that the state intended to preempt the field. Clearly, however, Sections 20-27-701 through -703 do not reflect a comprehensive scheme of protection. Rather, one could counter, the legislature has chosen to address these particular sites only, leaving open the possibility of local regulation in other areas or locations within the city.
Id. at 2.
My predecessor concluded that "a strong argument against preemption therefore exists" but offered the following proviso in opining on whether a municipality could ban smoking in eating establishments:
 [A] determination must also be made as to whether a municipal ban on smoking in eating establishments within the city is contrary to state law. In accordance with A.C.A. § 14-43-601(a)(1)(J) (1987), "[m]atters coming within the police power of the state including minimum public health . . . standards" fall within those matters designated as "state affairs." This would encompass the smoking regulations in §§ 20-27-701
through -703. As such, any exercise of municipal legislative power in the matter must be consistent with these Code sections. See A.C.A. § 14-43-601(a)(1) ("[s]tate affairs [are] subject to the general laws of the State of Arkansas[;]") and (a)(2) ("[t]he municipality may exercise any function or legislative power upon the foregoing state affairs if not in conflict with state law.") (Emphasis added.) See also generally Tompos v. City of Fayetteville, 280 Ark. 435, 438, 658 S.W.2d 404
(1983) (noting that "a city is empowered to enact an ordinance dealing with state affairs so long as the ordinances avoid conflict with state law.")
The subchapter discussed in my predecessor's opinion, comprising A.C.A. §§ 20-27-701 through -703, prohibits smoking in certain areas related to health services ands on school buses. The subchapter provides in its entirety as follows:
 (a) Information available to the General Assembly based upon scientific research data has shown that nonsmokers often receive damage to their health from the smoking of tobacco by others.
 (b) It is therefore declared to be the public policy of the State of Arkansas that the rights of nonsmokers be protected in the manner provided in this subchapter.
A.C.A. § 20-27-701.
 Any person violating the provisions of this subchapter shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than ten dollars ($10.00) nor more than one hundred dollars ($100).
A.C.A. § 20-27-702.
 (a) Smoking of tobacco or products containing tobacco in any form in a doctor's or dentist's waiting room, in hospital corridors, in nurses' stations in hospitals and clinics, in all hospital rooms, except private patient rooms in this state, and on school buses is prohibited.
 (b) The provisions of this subchapter shall not prohibit smoking in any of the aforementioned areas if the smoking is assigned to areas designated as smoking areas.
 (c) The provisions of this subchapter shall not apply to hotels, motels, and restaurants.
A.C.A. § 20-27-703.
In Opinion No. 95-302, my predecessor offered the following analysis of this subchapter:
 It might be contended in this regard that a municipal ban on smoking in eating establishments is contrary to § 20-27-703(c), which excludes "hotels, motels, and restaurants" from the provisions of §§ 20-27-701
through -703. The argument would likely focus on this exclusion as evidence that the state has decided not to include restaurants within the minimum public health standards; and as such, a municipal ban on smoking in eating establishments would be in conflict with state law.
 While this argument has some merit, the expression of legislative intent under § 20-27-703(c), supra, is by no means clear. The exclusion of "hotels, motels, and restaurants" could be viewed as an effort to clarify the reach of § 20-27-703(a), which focuses primarily on physician's offices, hospitals and clinics. Following that interpretation, the proposed municipal ban would not be in conflict because the state has simply determined not to extend the provisions to hotels, motels, and restaurants. State authority in these areas is, therefore, under that interpretation, unexercised. See generally Tompos, supra.
In my opinion, whatever else (if anything) A.C.A. § 20-27-703(c) does, it clearly does not locate "hotels, motels, and restaurants" beyond the range of potential antismoking legislation. Rather, it merely declares that "hotels, motels, and restaurants" will not be subject to regulation pursuant to a statute that expressly regulates only doctors' offices, hospitals, clinics and school buses. I believe that the body of state statutes that regulate smoking does not suggest any legislative intention to have the state exclusively occupy the regulatory field. See Ark. Op. Att'y Gen. No. 93-193 (opining that a municipality could restrict smoking on city-owned property); compare LDM, Inc. v. Princeton Regional HealthCommission, 764 A.2d 507, 526 (N.J.Super. 2000) (holding that the New Jersey legislature had preempted the field of smoking regulation by enacting a clear, comprehensive regulatory scheme, thereby barring regulation by local ordinances in Princeton). Furthermore, I do not believe A.C.A. § 20-27-703(c) can be read as imposing a blanket ban on local regulation of smoking in "hotels, motels, and restaurants."
In my opinion, the ordinance does not compel restaurant owners, managers and employees to function as law-enforcement officers. With respect to a manager's duties, Section 5 of the ordinance provides only that the manager post the required sign(s) and that he "not knowingly permit or fail to make reasonable efforts to prevent smoking in any area where smoking is prohibited." Subsection 6(b) further expressly declares that the police department and fire department, not the manager, will enforce the ordinance. I do not believe that "reasonable efforts to prevent smoking" in an establishment and in an area extending ten feet from its entrance would entail constant monitoring of the sort your constituent apparently feels he would need to conduct.[1] Although the police and the prosecutor are initially charged with determining when a violation of the ordinance has occurred, as a general proposition, it seems to me that compliance with the signage requirement and a willingness to report any infractions of which a manager becomes aware would more than meet his obligations under the ordinance.
In addition, the suggestion that the ordinance will be unequally enforced because some businesses are located "in highly visible areas" whereas others are not is not an allegation affecting the city's authority to adopt the ordinance. That is, the mere possibility of unequal enforcement does not render the ordinance facially invalid. Moreover, with respect to the possibility of unequal enforcement, Subsection 6(c) of the ordinance anticipates that in the course of "otherwise mandated inspections," an individual controlling the establishment will "self-certify" to the establishment's compliance with the ordinance. Nothing suggests that this process of inspection and self-certification will be applied unequally to establishments subject to the ordinance.
Finally, in my opinion, the ordinance does not lack "a sufficient nexus to the public health or any other reasonable governmental purpose." Your constituent suggests that the ordinance will violate his due process rights, that it is "overly broad" because it imposes "an outright ban" and that it "will not result in the least restrictive means of achieving any legitimate purpose." However, as noted in Phillips,333 Ark. at 189-90, municipalities have considerable discretion in addressing health issues, and legislation addressing such issues will be set aside only if it is "arbitrary, capricious, and unreasonable. . . ." With respect to your constituent's constitutional objections, I am enclosing for his information two federal district court cases — NYC C.L.A.S.H., Inc. v. City of New York, 351 F.Supp.2d 461
(S.D.N.Y. 2004), and The Players, Inc. v. City of New York,371 F.Supp.2d 522 (S.D.N.Y. 2005) — in which a federal district judge addressed in great detail various constitutional objections to the highly restrictive state and local legislation that regulates smoking in New York City. Among the objections addressed and rejected by the court were claims made under the First Amendment, the Equal Protection Clause, the Due Process Clause and the Fourth Amendment. I will not here repeat the court's cogent analysis, instead merely acknowledging that the analysis appears to correctly apply the principles established by the United States Supreme Court in entertaining such claims.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] I have found no case law that directly addresses whether a local government can by ordinance extend a no-smoking zone outside a building. In Entertainment Industry Coalition v. Tacoma-Pierce County HealthDepartment, 105 P.3d 985, 987-88 (Wash. 2005), the Washington Supreme Court struck as impermissible through conflict preemption a health-department regulation that, inter alia, included in the smoke-free zone "a presumptively reasonable minimum distance . . . of twenty-five (25) feet from entrances, exits, opening windows and ventilation intakes." The court did not address the reasonableness of the distance provision; rather, it simply observed that the regulation conflicted with state law that authorized business owners to authorize smoking areas.Id. at 988. In my opinion, in the present case, a reviewing court would inquire whether extending the smoke-free zone ten feet from an entrance could be characterized as arbitrary, capricious or unreasonable. SeePhillips, 333 Ark. at 190.