John Threet, Prosecuting Attorney Fourth Judicial District 280 North College, Suite 301 Fayetteville, Arkansas 72701
Dear Mr. Threet:
I am writing in response to your request for an opinion regarding the legality of an ordinance recently passed by the Washington County Quorum Court regarding the location of mailboxes. The ordinance mandates that mailboxes be located no less than two feet from the edge of the driving surface of any county road; that the mailboxes be made of "Postmaster approved light sheet metal or plastic only"; that the mailboxes be anchored by specified wood or metal posts "or other material comparable or less in strength"; that multiple mailbox mountings use individual mounting posts; that no reflective material be used on a mailbox except for the address; and that installation details of the Postmaster be followed. The ordinance recites as the rationale for these restrictions the need to mow and maintain the county right-of-way adjacent to county roads. The ordinance specifically expresses concern that brick mailboxes complicate the process of a county's mowing the right-of-way. The ordinance is not entirely clear regarding the status of mailboxes already in place. Article 3 provides that "[t]he County Judge or his designee may grant an extension of time to relocate any mailbox upon a showing of good cause" — a provision that suggests that existing mailboxes must be relocated if necessary to comply with the restrictions recited above. However, Article 4 provides that "[t]his Ordinance shall be applicable to any mailbox that is erected or replaced on or after the effective date of this Ordinance" — a provision that might be read as suggesting that the law will apply only to mailboxes installed after the date of the law's enactment. *Page 2 
RESPONSE
In my opinion, although this ordinance might otherwise be read as an appropriate exercise of the county's police power, federal law on the issue of mail delivery is paramount, and a pertinent federal regulation provides that mailboxes should be "set back 6 to 8 inches from the front face of the curb or road edge to the mailbox door." Postal Operation Manual (the "Manual") Issue 9, § 632.524. On the other hand, § 664, 3.2.6 and 631.32 of the Manual provides only that mailboxes be located where they can be safely and conveniently served by carriers "without leaving their vehicles." The former of these provisions, at the least, would appear to conflict with the two-foot setback requirement set forth in the ordinance.
With respect to the application of federal law to your question, the provision of postal services is ultimately controlled by the federal government. U.S. Const. art. 1, § 8, cl. 7; see also Johnson v.Maryland, 254 U.S. 51 (1920); Crivello v. Board of Adjustment ofMiddlesex, 183 F. Supp. 826 (D. N.J. 1960). The United States Postal Service, which is an independent agency of the federal executive branch,39 U.S.C. § 201, is statutorily charged with providing prompt and efficient postal delivery, 39 U.S.C. § 101(a). Under the Supremacy Clause of the U.S. Constitution, any state law or local ordinance that conflicts with federal law will be void. U.S. Const., art. IV, cl. 2.
The Postal Service has been given the power to adopt regulations necessary to fulfill its mission. 39 U.S.C. 401(2). As noted in my opening paragraph, three sections of the Manual provide generally only that mailboxes be located where they can be safely and conveniently served by carriers "without leaving their vehicles." By contrast, one regulation appears to mandate that a mailbox door be located six to eight inches from the road edge.
The question arises, then, whether a political subdivision might enact an ordinance that does not accord with this distance requirement but that would nevertheless allow a carrier safely and conveniently to deliver the mail from his vehicle. At first blush, the answer to this question would appear to be "no," given that allowing a further setback would directly contravene the setback restriction mandated in § 632.524 of the Manual. However, some question exists whether the Postal Service is committed to rigidly applying this regulation. Indeed, in correspondence directed to this office, counsel for the Postal Service has offered the following: *Page 3 
 The Postal Service has chosen not to specify by regulation exacting measurement requirements for the location of boxes because of the almost infinite variances that individual delivery points present resulting from varying terrain, road conditions, speed limits, and ditches, etc.
 * * * It is the Postal Service's position that a county does not have the authority to dictate the Postal Service delivery policy. That being said, the Postal Service does not perceive that a county's interest in mowing an easement and the Postal Service's delivery regulations are necessarily mutually exclusive concepts, and believes that the county and the Postal Service could work together in an effort to resolve any inconsistencies.
Correspondence from United States Postal Service Law Department, Southwest Office, dated February 24, 2009.
This pronouncement would suggest that local officials, perhaps including the county attorney, should consult with the Postmaster regarding the terms of the ordinance at issue.
Even assuming the Supremacy Clause does not apply, the distinct question arises whether the county is authorized under its police power to direct residents to undertake the expense of relocating mailboxes. In Op. Att'y Gen. No. 97-308, one of my predecessors offered the following regarding the scope of the police power:
 In Phillips v. Town of Oak Grove, 33 Ark. 183, 189, 968 S.W.2d 600 (1998), the Supreme Court offered the following remarks on the police power:
 In Springfield v. City of Little Rock, 226 Ark. 462, 290 S.W.2d 620 (1956), we recognized the city's plenary duty to exercise its police power in the interest of the public health and safety of its inhabitants. Id. at 464-65, 290 S.W.2d at 622. The police power of the state is founded in public *Page 4 
necessity and this necessity must exist in order to justify its exercise. Id. It is always justified when it can be said to be in the interest of the public health, public safety, public comfort, and when it is, private rights must yield to public security, under reasonable laws. City of Little Rock v. Smith, 204 Ark. 692, 695, 163 S.W.2d 705, 707 (1942) (quoting Beaty v. Humphrey, 195 Ark. 1008, 115 S.W.2d 559
(1938)).
As my predecessor further noted:
 Counties can also enact such ordinances under their more general police power. The provisions of A.C.A. § 14-14-801[b](13) authorize counties to exercise power that is not inconsistent with others laws, and that is necessary for the effective administration of the county's authorized services and functions. A.C.A. § 14-14-801[b](13).
As noted above, the ordinance is not entirely clear regarding whether the county would require the relocation of mailboxes already in place. Assuming that the ordinance might have this effect, I appreciate that mandating compliance with the law might entail some expense on the part of citizens compelled to relocate their mailboxes. However, although the question is ultimately one of fact, I strongly doubt that any such expense would rise to the condition of an unconstitutional taking on the part of the county. As I noted in Op. Att'y Gen. No. 2007-056:
 Both the Fifth Amendment to the U.S. Constitution and Article 2, § 22 of the Arkansas Constitution prohibit the taking of private property for public use without just compensation. The question of whether such a "taking" has actually occurred is a question of fact. See generally Lucas v. South Carolina Coastal Council, 502 U.S. 966 (1991); Hodel v. Virginia Surface Mining Reclamation Association, 452 U.S. 264 (1981); Op. Att'y Gen. 95-189. As the court in Hodel, supra, made clear, a "takings" analysis can only be definitively undertaken in light of the specific facts of a particular claim:
 . . . the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision *Page 5 
necessary. [Citations omitted.] Adherence to this rule is particularly important in cases raising allegations of an unconstitutional taking of private property. Just last Term, we reaffirmed that
 "this Court has generally `been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons.' Rather, it has examined the `taking' question by engaging in essentially ad hoc, factual inquiries that have identified several factors — such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action — that have particular significance." Kaiser Aetna v. United States, 444 U.S. 164, 175 (1979) (citations omitted).
 These "ad hoc, factual inquires" must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances.
 452 U.S. at 294-95.
 Accordingly, the "mere enactment" of the municipal planning statutes, or any local regulations promulgated pursuant thereto, will not support a successful takings claim. Id. at 297. The question of whether the statutes or any local regulations effect an uncompensated "taking" of private property instead requires a factual determination that is outside the scope of an opinion from this office.
I continue to subscribe to this statement of the law. I am not a finder of fact situated to opine on the effect of a law in any particular instance. I will observe, however, that an ordinance requiring the relocation of certain mailboxes would appear to have minimal economic consequences in virtually all particular instances. I will further opine that the mere enactment of this ordinance, if not *Page 6 
preempted under the Supremacy Clause, is not in itself offensive in any legal respect.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh *Page 1